STATE of Wisconsin,
Plaintiff-Respondent,

v.

Abraham C. NEGRETE,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2010AP1702. Oral argument February 8, 2012.
—Decided July 12, 2012.*

2012 WI 92

(Also reported in 819 N.W.2d 749.)

For the defendant-appellant-petitioner, there were briefs filed by *Jeffrey W. Jensen*, Milwaukee, and oral argument by *Jeffrey W. Jensen*.

For the plaintiff-respondent, the cause was argued by *Sarah Burgundy* and the brief was filed by *Thomas E. Dietrich*, assistant attorneys general, with whom on the brief was *J.B. Van Hollen*, attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This is a review of an unpublished decision of the court of appeals, which affirmed the circuit court's denial of Abraham Negrete's postconviction motion to withdraw a guilty plea.[1] The plea at issue was entered in 1992, and no transcript of the plea hearing is available. The sole issue on review is whether Negrete was entitled to an evidentiary hearing on his plea withdrawal motion under Wis. Stat. § 971.08(2) (2009–10).[2] Resolution of this issue turns on the pleading requirements of a motion to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2). Section 971.08(2) provides that a defendant has a statutory right to withdraw a guilty or no contest plea upon proving that:   (1) the circuit court failed to personally advise the defendant of the potential deportation consequences of the plea; and (2) the plea is likely to result in one of the enumerated immigration consequences.

---

[1] The Honorable Andrew T. Gonring presided in this post-conviction proceeding in the Washington County Circuit Court; the Honorable Leo F. Schlaefer presided in the underlying action in which Negrete entered his plea.

[2] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

¶ 2. In support of his motion, Negrete stated in an affidavit that he "do[es] not recall" whether the plea-accepting court advised him of the potential deportation consequences of his plea.[3] Negrete's affidavit also states that he is now subject to deportation proceedings. However, Negrete's plea questionnaire indicates that he was advised of the immigration consequences prior to making his plea.

¶ 3. We conclude that Negrete's allegations are insufficient to warrant an evidentiary hearing. Where a defendant seeks to withdraw a guilty plea under Wis. Stat. § 971.08(2), but there is no transcript of the plea hearing, the pleading requirements for such motions are those set forth in *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). Under the applicable *Bentley*-type standard, Negrete's affidavit has not alleged sufficient facts that, if true, would entitle him to withdraw his guilty plea. Specifically, Negrete has failed to sufficiently allege that the plea-accepting court did not tell him of the potential immigration consequences of his plea. In addition, his motion fails to allege sufficient facts demonstrating a causal nexus between his guilty plea and the likelihood of any immigration consequences. Therefore, Negrete's motion to withdraw his guilty plea under § 971.08(2) was properly denied.

## I. BACKGROUND

¶ 4. In April 1992, Abraham Negrete pleaded guilty to one count of second-degree sexual assault of a person under the age of 16 years, in violation of Wis.

---

[3] We use the term "plea-accepting court" to refer to the circuit court in which Negrete entered his plea in 1992; "the circuit court" refers to the court in which the present postconviction proceeding was initiated in 2010.

8

Stat. § 948.02(2) (1991–92). As a result, Negrete was sentenced to 18 months of probation and ordered to pay restitution. After serving his probation and paying restitution, Negrete was discharged in April 1994.

¶ 5. On March 10, 2010, nearly 18 years after his conviction, Negrete moved to withdraw his guilty plea for the 1992 sexual assault charge. The motion was based on Wis. Stat. § 971.08(2),[4] which allows a defendant to withdraw a guilty or no contest plea where a plea-accepting court fails to personally advise the defendant of the potential immigration consequences of the plea,[5] and that plea is likely to result in an adverse immigration consequence listed in § 971.08(2). Negrete's motion alleged that when accepting Negrete's plea, the court "did not inform" him of the potential immigration consequences of his plea, and that Negrete is now "the subject of deportation proceedings."

---

[4] When accepting a defendant's plea, Wis. Stat. § 971.08(1)(c) directs that:

> Before the court accepts a plea of guilty or no contest, it shall . . . [a]ddress the defendant personally and advise the defendant as follows:  "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

Additionally, Wis. Stat. § 971.08(2) provides that:

> If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.

[5] Throughout this opinion, we refer to "immigration consequences" as shorthand for the various adverse immigration actions referred to under Wis. Stat. § 971.08(1)(c) & (2).

¶ 6. Whereas Negrete's *motion* affirmatively stated that the court "did not inform Negrete" of the potential immigration consequences, his *affidavit* filed in support of the motion was equivocal. His affidavit stated, "I do not recall the court, or my lawyer, ever telling me of [the potential immigration consequences] of the plea." Negrete also averred that he had not understood the potential immigration consequences of his plea, and that had he known, he would not have entered the guilty plea.

¶ 7. At the time of his conviction in 1992, Negrete indicated that he did not intend to seek postconviction relief; accordingly, no transcript of the plea hearing was created from the court reporter's notes. Moreover, Negrete's attorney for the 1992 offense has died, and the presiding judge in that case, the Honorable Leo F. Schlaefer, has retired. Negrete stated in his motion to withdraw his plea that, if given the opportunity, he would testify that he was not warned on the record at the time he entered his plea.

¶ 8. In the circuit court, Negrete's argument for plea withdrawal relied largely on this court's decision in *State v. Douangmala*, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, which rejected the harmless error approach when a defendant seeks to withdraw a plea under Wis. Stat. § 971.08(2). *Id.*, ¶ 46. Under the harmless error approach, a defendant alleging error under § 971.08(2) would not have been allowed to withdraw his plea if the State could show that the defendant was otherwise aware of the likely immigration consequences of his plea. *See State v. Chavez*, 175 Wis. 2d 366, 368–71, 498 N.W.2d 887 (Ct. App. 1993).

¶ 9. In response to Negrete's motion, the State emphasized that, at the time of Negrete's plea, motions to withdraw under Wis. Stat. § 971.08(2) were subject

10

to the harmless error approach established in *Chavez*. *Id.* The State relied on our decision in *State v. Lagundoye*, 2004 WI 4, 268 Wis. 2d 77, 674 N.W.2d 526, which provided that *Douangmala*'s repudiation of the harmless error approach was not retroactively applicable because *Douangmala*'s holding was a new rule of criminal procedure, and such rules are not applied to cases that were final before the rule's issuance. *Id.*, ¶ 2. Because Negrete's case was final long before our decision in *Douangmala*, the State argued, harmless error applied to Negrete's motion.

¶ 10. In support of its argument that any error was harmless, the State primarily relied on Negrete's "Request to Enter Plea and Waiver of Rights" form ("plea questionnaire"), which Negrete submitted to the court at the time of his 1992 plea. That form includes numerous statements to which a pleading defendant must agree before entering a plea. Most statements include an adjacent blank space where a defendant must place his initials to indicate his understanding of the statement. The statement relevant to our discussion here, paragraph 20 of the plea questionnaire, provides in language substantially similar to the statutory warning in Wis. Stat. § 971.08(1)(c):

> If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest and a finding of guilty by the Court of the offense(s) with which you are charged in the Criminal Complaint or Information, may result in deportation, exclusion from admission to this Country or a denial of naturalization under federal law.

¶ 11. In the blank space adjacent to that paragraph, Negrete's initials appear. Also, near the end of the document, following the initialed paragraphs, there is a statement that "I have read this entire document

11

and I understand its contents." That provision is signed by "Abe Negrete," and dated April 29, 1992, the same day as the plea hearing. Finally, the plea questionnaire is signed by Negrete's then-attorney, Gary McGregor, who acknowledged by his signature that he "discussed and explained the contents of the questionnaire to the defendant, that the defendant acknowledged his understanding of each item in this questionnaire, including any post-conviction relief procedures, and that [the attorney knows] the above signature to be the defendant's."

¶ 12. In deciding whether to grant Negrete's motion to withdraw, the circuit court concluded that, based on *Lagundoye*, the harmless error analysis applied. In light of the plea questionnaire, the circuit court determined that any failure by the plea-accepting court to personally advise Negrete of the deportation consequences of his plea was harmless because the questionnaire demonstrated that Negrete was independently aware of those consequences. Accordingly, the court denied Negrete's motion without an evidentiary hearing.

¶ 13. The court of appeals affirmed in an unpublished decision. That court assumed that Negrete had not been personally advised as required under Wis. Stat. § 971.08(1)(c), but that, nonetheless, such error was harmless. Given the conflict between Negrete's allegations and the plea questionnaire in the record, the court concluded that nothing would have been added by an evidentiary hearing at which Negrete would have been the sole witness. Therefore, based on the entirety of the record, the court held that there was no question that Negrete was aware of the potential immigration consequences of his plea, and that any failure to personally advise him, if such a failure occurred, was harmless.

¶ 14.  Negrete petitioned this court for review, which we granted. We now affirm the decision of the court of appeals.

## II.  DISCUSSION

### A.  Standard of Review

¶ 15.  Negrete asserts that under Wis. Stat. § 971.08(2), he is entitled to withdraw his guilty plea. This requires us to interpret the language of that statute to determine what a defendant must plead in his motion to satisfy the statutory elements. Statutory interpretation presents a question of law that we review independently of the circuit court and the court of appeals, although benefiting from those courts' analyses. *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 14, 335 Wis. 2d 1, 803 N.W.2d 623. Where the meaning of the statute is plain from the words used, we ordinarily will not examine extrinsic sources such as legislative history. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 16.  In addition, as relevant here, there are two methods by which courts typically review motions to withdraw guilty or no contest pleas after judgment and sentence. The first method is based on the general rule that a defendant seeking to withdraw a guilty or no contest plea after sentencing must show " 'manifest injustice by clear and convincing evidence.' " *State v. Hampton*, 2004 WI 107, ¶ 60, 274 Wis. 2d 379, 683 N.W.2d 14 (quoting *Bentley*, 201 Wis. 2d at 311). This method, often referred to as the *Bentley* standard, *see*

*id.*, ¶ 51, applies a two-step standard of review for motions to withdraw guilty or no contest pleas. *Id.*, ¶ 55.

¶ 17.  Under the first step of a *Bentley*-type review, a reviewing court must determine whether a defendant's postconviction motion alleges sufficient material facts that, if true, would entitle the defendant to relief. *See State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433 (citing *Bentley*, 201 Wis. 2d at 309–10). This presents a question of law subject to independent review. *Id.* Where a defendant's motion alleges facts that would entitle him to withdraw his plea, but the record conclusively demonstrates that the defendant is not entitled to relief, no evidentiary hearing is required.[6] *Id.* Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law, subject to independent review. *Id.*

¶ 18.  Under the second step of a *Bentley*–type review, if the defendant's motion does not allege sufficient facts to entitle the defendant to relief, an appellate court reviews the circuit court's decision to grant or deny an evidentiary hearing under an erroneous exercise of discretion standard. *Id.* The circuit court's discretionary decision will be sustained if the court has examined the relevant facts of record, applied a proper legal standard, and reached a conclusion that a reasonable judge could reach. *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶¶ 29–30, 326 Wis. 2d 640, 785 N.W.2d 493.

---

[6] Where a defendant alleges sufficient facts and the record does not conclusively demonstrate that the defendant is not entitled to relief, the circuit court is without discretion, and must grant an evidentiary hearing. *State v. Douangmala*, 2002 WI 62, ¶¶ 23–25, 253 Wis. 2d 173, 646 N.W.2d 1; *State v. Hampton*, 2004 WI 107, ¶ 55, 274 Wis. 2d 379, 683 N.W.2d 14.

14

¶ 19.  Another method, alleged to be applicable here, is the standard of review for a guilty or no contest plea established under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Under *Bangert*, we established an approach for plea withdrawals whereby a defendant may shift the burden of proof to the State when:  (1) the defendant can point to a plea colloquy deficiency evident in the plea colloquy transcript, and (2) the defendant alleges that he did not know or understand the information that should have been provided in the colloquy. *Id.* at 274–75; *see Hampton*, 274 Wis. 2d 379, ¶ 46. When a defendant is able to make such a showing, the burden then shifts to the State to show by clear and convincing evidence that the defendant's plea was made knowingly, intelligently, and voluntarily. *Bangert*, 131 Wis. 2d at 275.  Additionally, where a defendant makes such a showing, a reviewing court considers the sufficiency of the colloquy and the necessity of an evidentiary hearing as questions of law, subject to independent review, but benefiting from the discussions of the circuit court and the court of appeals. *See State v. Hoppe*, 2009 WI 41, ¶ 17, 317 Wis. 2d 161, 765 N.W.2d 794.

¶ 20.  We conclude that the more broadly applicable *Bentley*-type plea withdrawal standard of review is appropriate here. In so concluding, we also hold that *Bangert*'s burden shifting procedure is not applicable under these circumstances because the *Bangert* procedure is predicated on a defendant making "a pointed showing" of an error in the plea colloquy by reference to the plea colloquy transcript.[7] *See Hampton*, 274 Wis. 2d

---

[7] We discuss our reasoning for this conclusion in greater depth in Section II.C., below, where we address the applicable

379, ¶ 46. Because Negrete has made no such showing, *Bangert*'s burden shifting procedure is inapplicable.

¶ 21.   Accordingly, in applying the *Bentley*-type standard of review, we independently review whether Negrete's motion alleges sufficient facts that, if true, would entitle him to withdraw his plea. Additionally, because we conclude that Negrete's motion did not allege sufficient facts to entitle him to relief, we review the circuit court's decision to deny his motion under an erroneous exercise of discretion standard.

### B.   Wisconsin Stat. § 971.08(2)

¶ 22.   To determine what a defendant must allege in a motion to withdraw a guilty plea under Wis. Stat. § 971.08(2), we examine the language of the statute:

> If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.

██

¶ 23.   The statutory language is clear. As we recognized in *Douangmala*, 253 Wis. 2d 173, ¶¶ 23–25, where a defendant's motion establishes that a court failed to properly advise the defendant of the potential immigration consequences of his plea, the defendant

pleading standard for motions to withdraw under Wis. Stat. § 971.08(2) where the plea hearing transcript is unavailable. In that section, we examine the rationale underlying *Bangert*'s burden shifting procedure and discuss why such rationale is unavailing where a defendant does not point to an error in the plea hearing transcript.

may withdraw his plea and enter a new plea, without regard to whether he was otherwise aware of such consequences. To employ Wis. Stat. § 971.08(2) to withdraw his plea, however, the defendant's motion must first allege two facts:    (1) that the circuit court "fail[ed] to advise [the] defendant [of the deportation consequences of the defendant's plea] as required by [§ 971.08(1)(c)]"; and (2) that the defendant's "plea is likely to result in the defendant's deportation, exclusion from admission to this country[,] or denial of naturalization." Wis. Stat. § 971.08(2); *see also* Cody Harris, Comment, *A Problem of Proof: How Routine Destruction of Court Records Routinely Destroys a Statutory Remedy*, 59 Stan. L. Rev. 1791, 1802 (2007) (discussing *People v. Totari*, 50 P.3d 781, 785–86 (Cal. 2002)), establishing similar pleading requirements for a motion to withdraw a guilty or no contest plea to avoid deportation consequences of the plea).

¶ 24.    First, Wis. Stat. § 971.08(2) requires a defendant to allege that the plea-accepting court "fail[ed] to advise [the] defendant as required by [§ 971.08(1)(c)]." Therefore, a defendant must affirmatively assert that the plea-accepting court did not tell the defendant of the potential immigration consequences of his plea. *See* § 971.08(2). A defendant's allegation that he does not recall whether the judge told him of the potential immigration consequences of his plea, or that it is possible that the judge might have failed to do so, does not allege facts that, if true, would entitle the defendant to relief. *See Hampton*, 274 Wis. 2d 379, ¶ 55.

¶ 25.    Such inconclusive assertions as "I do not recall" will not support plea withdrawal because the truth or falsity of the defendant's statement has no

bearing on whether the court actually advised the defendant of the potential immigration consequences of the plea. Whether the defendant *remembers* being told is not the operative fact upon which the right of withdrawal under Wis. Stat. § 971.08(2) is based; rather, the operative fact is whether the judge fulfilled the statutory requirement. Consequently, if the defendant does not allege that the court did not tell him of the potential immigration consequences of his plea, the defendant has not met the first element of § 971.08(2), and his motion to withdraw may be denied without an evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶ 9.

¶ 26.  The second allegation that a defendant must make when seeking to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2) is that the plea "is likely to result in the defendant's deportation, exclusion from admission to this country[,] or denial of naturalization." This requires that the defendant allege facts demonstrating a causal nexus between the entry of the guilty or no contest plea at issue and the federal government's likely institution of adverse immigration actions consistent with § 971.08(1)(c). Bare allegations of possible deportation are insufficient.

¶ 27.  The immigration consequences flowing from a guilty or no contest plea are tied to federal law. *See* Andrew Moore, *Criminal Deportation, Post-Conviction Relief and the Lost Cause of Uniformity*, 22 Geo. Immigr. L.J. 665, 667–77 (2008). Accordingly, to satisfy Wis. Stat. § 971.08(2)'s "likelihood" of immigration consequences requirement, a defendant may allege that:  (1) the defendant pleaded guilty or no contest to a crime for which immigration consequences are provided under federal law; and (2) because of his plea, the federal

18

government has manifested its intent to institute one of the immigration consequences listed in § 971.08(2), as to the defendant.[8] As alternatives, a defendant may submit some written notification that the defendant has received from a federal agent that imports adverse immigration consequences because of the plea that was entered; or, a defendant may narrate verbal communications that the defendant has had with a federal agent advising that adverse immigration consequences were likely and that such consequences were tied to the crime for which the plea was entered.

¶ 28. To summarize, under the applicable pleading standards for motions to withdraw guilty or no contest pleas under Wis. Stat. § 971.08(2) where the plea hearing transcript is unavailable, a defendant must allege sufficient facts that, if true, would demon-

---

[8] More specifically, if a defendant chooses to establish that the crime to which the defendant pleaded is one for which the defendant would have been subject to potentially adverse immigration consequences under controlling federal law, the defendant should cite the federal law upon which reliance is placed. For example, under federal law, 8 U.S.C. § 1227 (2006) delineates numerous categories of aliens who are potentially deportable. Relevant to motions under Wis. Stat. § 971.08(2) is the federal statute providing that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). *See State v. Baeza*, 174 Wis. 2d 118, 127, 496 N.W.2d 233 (Ct. App. 1993).

In addition, in such a motion, a defendant should allege that the federal government has conveyed its intent to impose one of the enumerated immigration consequences set out in Wis. Stat. § 971.08(2). This required nexus between the crime to which a plea was made and adverse immigration consequences can be demonstrated by alleging facts that show that, because of his plea, the defendant has become subject to deportation proceedings, has been excluded from admission to the country, or has been denied naturalization.

19

strate satisfaction of the statute's two requirements. A defendant must allege that the court did not tell the defendant of the immigration consequences of his plea and that entry of the plea is likely to result in one of the consequences enumerated in § 971.08(2). However, if the record conclusively demonstrates that the defendant is not entitled to relief, no hearing is required; or, if the defendant does not allege sufficient facts that, if true, would entitle the defendant to relief, the circuit court is within its discretion to deny the defendant's motion without holding an evidentiary hearing. *See State v. Balliette*, 2011 WI 79, ¶ 18, 336 Wis. 2d 358, 805 N.W.2d 334.

### C. Applicability of *Bentley*-type Standard

¶ 29. Acknowledging that allegations of a defective plea colloquy are typically subject to analysis under *Bangert*, we briefly discuss our rationale for applying a *Bentley*-type pleading requirement to the circumstances of this case. First, the *Bentley*-type pleading standard embodies the general rule that a defendant seeking to withdraw a guilty or no contest plea after sentencing must prove manifest injustice by clear and convincing evidence. *See Bangert*, 131 Wis. 2d at 283; *Hampton*, 274 Wis. 2d 379, ¶ 60. Accordingly, the *Bentley*-type, manifest-injustice-by-clear-and-convincing-evidence standard is the starting point from which we may determine whether any other pleading standards apply.

¶ 30. As an alternative pleading standard for motions to withdraw guilty or no contest pleas, *Bangert* contemplated a shift in the burden of proof from the defendant to the State based upon a showing of a deficiency in the plea colloquy transcript. *See Bangert*, 131 Wis. 2d at 274–75. As we have stated, the necessary

showing requires a defendant to point to specific deficiencies evident on the face of the plea colloquy transcript. *See Hampton*, 274 Wis. 2d 379, ¶ 51 (*Bangert* analysis is "confined to alleged defects in the record of the plea colloquy"). In addition, a defendant's motion must allege that he did not know or understand the information that should have been presented at the plea hearing. *State v. Brown*, 2006 WI 100, ¶ 36, 293 Wis. 2d 594, 716 N.W.2d 906. Once the defendant satisfies *Bangert's* preliminary requirements, the burden then shifts to the State to show by clear and convincing evidence at an evidentiary hearing that, notwithstanding the colloquy deficiencies, the defendant's plea was entered knowingly, intelligently, and voluntarily. *Hampton*, 274 Wis. 2d 379, ¶ 46.

¶ 31. Where the transcript of the plea hearing is unavailable, however, *Bangert's* burden shifting procedure does not apply, because: (1) the defendant will not be able to make the requisite showing from the transcript that the circuit court erred in the plea colloquy, and (2) the rationale underlying *Bangert's* burden shifting rule does not support extending that rule to situations where a violation is not evident from the transcript. Instead, the policy of finality counsels that a party seeking to disrupt a final judgment by withdrawing his plea must first allege facts which, if true, demonstrate that manifest injustice has occurred and that relief is therefore warranted.[9] *See Balliette*, 336 Wis. 2d 358, ¶¶ 57–58; *see also State v. Ernst*, 2005 WI 107, ¶ 25, 283 Wis. 2d 300, 699 N.W.2d 92 ("Any claim of a violation on a collateral attack that does not detail such facts will fail.").

---

[9] Here, the legislature has effectively provided that "manifest injustice" is established by satisfying the elements of Wis. Stat. § 971.08(2).

21

¶ 32. First, practically speaking, where there is no transcript of the plea colloquy, the showing required under *Bangert*, relying on evidence in a transcript of defects in the plea colloquy, simply cannot be made. *See Balliette*, 336 Wis. 2d 358, ¶ 57. Second, and more fundamentally, the rationale underlying *Bangert's* low standard for burden shifting—that the State can avoid such burden by ensuring that the circuit court complies with the colloquy requirements—rings hollow, because there is no evidence in the record that the court did not comply. *See Hampton*, 274 Wis. 2d 379, ¶ 51. Without linking the shift of the burden of proof to a showing of error evident on the face of the transcript, we would ignore the general rule that a defendant seeking to withdraw his plea retains the burden of proving his claim by clear and convincing evidence. *See id.*, ¶¶ 60, 63–64.

¶ 33. Accordingly, where a defendant is unable to point to a defect evident on the face of a plea colloquy transcript because such transcript is unavailable, the more appropriate review of a motion to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2) is that set forth in *Bentley*, 201 Wis. 2d at 310.[10] Allegations that are "less susceptible to objective confirmation in the record" are particularly suited to a *Bentley*-type analysis,[11] because the defendant is required to allege particular facts that would entitle the defendant to relief before the court is obligated to hold an evidentiary

---

[10] Indeed, this standard largely corresponds to the general statutory requirement for particularity in motion pleading. *See* Wis. Stat. § 971.30(2)(c).

[11] The *Bentley*-type standard has been characterized, by reference to *Bangert*, as applying to errors in the pleading process "extrinsic to the plea colloquy," such as ineffective assistance of counsel. *See, e.g., State v. Howell*, 2007 WI 75, ¶ 74, 301 Wis. 2d 350, 734 N.W.2d 48. Although this distinction between matters within the plea colloquy and matters extrinsic to the

hearing on the motion. *See Hampton*, 274 Wis. 2d 379, ¶ 51. Therefore, a defendant seeking relief under § 971.08(2) must allege sufficient facts in his motion that, if true, would demonstrate that the plea-accepting court failed to tell the defendant of the potential immigration consequences of his plea, and that the defendant's plea is likely to result in adverse immigration consequences.[12]

## D. Application

¶ 34.    Having set forth the applicable pleading requirements for motions to withdraw a plea of guilty

colloquy often provides sufficient guidance, the distinction departs from *Bangert's* original holding and is therefore not entirely accurate. Because *Bangert* provided a method by which defendants could shift the burden of proof to the State when the defendant could *show* from the face of the transcript that the circuit court had erred in the plea colloquy and that he did not understand the information that should have been provided, we now reaffirm that where a defendant is not able to make such a showing under *Bangert*, the defendant may nonetheless avail himself of the *Bentley*-type procedure to prove that he is entitled to withdraw his guilty or no contest plea.

[12] Our decision in this case is not affected by *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). First, *Padilla* held that a defense attorney's failure to properly inform his client of potential immigration consequences may constitute deficient performance under the Sixth Amendment. *Id.* at 1483–84. Here, Negrete does not allege that counsel's performance was deficient. Second, and more to the point, by enacting Wis. Stat. § 971.08(1)(c) & (2), Wisconsin codified the protections contemplated in *Padilla*, but placed the duty to warn on the circuit court, rather than solely on the attorney. Accordingly, because the right at issue here, § 971.08(1)(c)'s right to be informed of the immigration consequences of a guilty or no contest plea, is a court-oriented, statutorily protected right, our analysis is distinct from that of *Padilla*.

or no contest under Wis. Stat. § 971.08(2) where the plea hearing transcript is unavailable, we turn to the application of that standard to Negrete's motion. We conclude that under the applicable *Bentley*-type review, Negrete's motion does not set forth sufficient, nonconclusory facts that, if true, would entitle him to relief. *See Allen*, 274 Wis. 2d 568, ¶ 9.

¶ 35.   With regard to the first pleading requirement under Wis. Stat. § 971.08(2), that the circuit court did not tell Negrete of the immigration consequences of his plea, Negrete alleges in his motion that "the court did not inform Negrete, on the record, of the immigration consequences of his guilty plea." However, Negrete's affidavit, filed simultaneously with his motion, alleges that Negrete "do[es] not recall" whether he received the necessary warning. We have recognized that evidentiary facts stated in an affidavit supplant allegations in a pleading. *Moutry v. Am. Mut. Liab. Ins. Co.*, 35 Wis. 2d 652, 659, 151 N.W.2d 630 (1967). Therefore, Negrete's motion, when taken together with his affidavit, fails to satisfy the first requirement of § 971.08(2).[13]

¶ 36.   The second pleading requirement for motions under Wis. Stat. § 971.08(2) is that a defendant must allege that the plea at issue "is likely to result" in one of the enumerated immigration consequences. To this end, Negrete's motion states the offense for which

[13] By failing to satisfy one of the requirements of Wis. Stat. § 971.08(2), Negrete has failed to demonstrate that he is entitled to relief as a matter of law. We nonetheless examine Negrete's motion under § 971.08(2)'s second requirement to provide guidance for defendants seeking relief in the future under that section, and to provide support for our conclusion that the circuit court properly exercised its discretion in denying Negrete's motion.

he entered the plea ("second degree sexual assault of a child") and alleges that "Negrete is now the subject of deportation proceedings." These bare allegations are insufficient to demonstrate that Negrete's "plea is likely to result in [his] deportation." *See Xiong v. INS*, 173 F.3d 601, 604–08 (7th Cir. 1999).

¶ 37. To comply with the *Bentley*-type pleading standard in the context of Wis. Stat. § 971.08(2), a defendant may set forth the crime of conviction, the applicable federal statutes establishing his potential deportability, and those facts admitted in his plea that bring his crime within the federal statutes. In so doing, a defendant may submit some written notification that the defendant has received from a federal agent that imports adverse immigration consequences because of the plea that was entered; or, a defendant may narrate verbal communications that the defendant has had with a federal agent advising that adverse immigration consequences were likely and that such consequences were tied to the crime for which the plea was entered. A defendant's motion should not require the circuit court or a reviewing court to speculate about the factual basis for the requisite nexus.

¶ 38. Accordingly, we conclude that Negrete's motion fails to allege facts sufficient to entitle him to relief because he has not satisfied the two necessary requirements of Wis. Stat. § 971.08(2). Therefore, under the first step of the *Bentley*-type analysis, we conclude that Negrete is not entitled to relief as a matter of law.

¶ 39. We now turn to the second step of the *Bentley*-type analysis; that is, whether the circuit court properly exercised its discretion in denying Negrete's motion. Here, the circuit court examined Negrete's motion as the parties had framed the issue, under the

25

harmless error analysis; specifically, the court concluded that under *Lagundoye*, harmless error applied to Negrete's 1992 plea. Consequently, although the circuit court applied a proper legal standard, it cannot be said that the circuit court exercised its discretion under identical legal standards as those set forth herein.

¶ 40. Nothing in our analysis, however, suggests that *Lagundoye* is no longer good law; accordingly, we would be mistaken to say that the circuit court applied an *erroneous* legal standard. Rather, the court examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion. *See Miller*, 326 Wis. 2d 640, ¶¶ 29–30. We conclude, therefore, that the circuit court did not erroneously exercise its discretion in denying Negrete's motion.

### III. CONCLUSION

¶ 41. We conclude that Negrete's allegations are insufficient to warrant an evidentiary hearing. Where a defendant seeks to withdraw a guilty plea under Wis. Stat. § 971.08(2), but there is no transcript of the plea hearing, the pleading requirements for such motions are those set forth in *Bentley*, 201 Wis. 2d at 310. Under the applicable *Bentley*-type standard, Negrete's affidavit has not alleged sufficient facts that, if true, would entitle him to withdraw his guilty plea. Specifically, Negrete has failed to sufficiently allege that the plea-accepting court did not tell him of the potential immigration consequences of his plea. In addition, his motion fails to allege sufficient facts demonstrating a causal nexus between his guilty plea and the likelihood of any immigration consequences. Therefore, Negrete's motion to withdraw his guilty plea under § 971.08(2) was properly denied.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 42. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Wisconsin Stat. § 971.08(2) provides remedies when a circuit court fails to give a defendant the warnings about the immigration consequences resulting from a guilty or no contest plea.[1] It provides, in relevant part, as follows:

> *If a court fails to advise a defendant as required by sub. (1)(c)* and a defendant later shows that *the plea is likely to result in the defendant's deportation*, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. (Emphases added.)

¶ 43. At one point, the majority recites these legislative pleading requirements correctly. The majority explains that the defendant's motion must allege: "(1) that the circuit court 'fail[ed] to advise [the] defendant [of the deportation consequences of the defendant's plea] as required by [§ 971.08(1)(c)]'; and (2) that the defendant's 'plea is likely to result in the defendant's deportation, exclusion from admission to this country[,] or denial of naturalization." Majority op., ¶ 23.

---

[1] Wisconsin Stat. § 971.08(1)(c) sets forth as follows what the circuit court is to state in addressing the defendant about immigration consequences:

971.08(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

. . . .

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial or naturalization, under federal law."

27

¶ 44. Thereafter the majority opinion transmutes the statutory pleading requirements without the benefit of briefs or argument by the State or Negrete and applies them retroactively to Negrete.

¶ 45. I dissent because the majority opinion improperly applies the first statutory pleading requirement and creates a second, brand-new pleading requirement for a motion to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2) when a circuit court fails to give a defendant the warnings.

¶ 46. With respect to the first pleading requirement—allege that the circuit court failed to advise the defendant of immigration consequences—the majority (adopting the State's argument) ignores and misconstrues the thrust of Negrete's motion and supporting affidavit.

¶ 47. With respect to the second pleading requirement—allege that the plea is likely to result in immigration consequences—the majority deviates from the text of the statute and sets forth several pleading requirements not in the text of the statute. These new-for-2012–judicially-created pleading requirements, not grounded in the text of the statute and not briefed or argued by the State or Negrete, are then unfairly applied retroactively to Negrete's motion filed in 2010. Majority op., ¶ 3.[2]

---

[2] In the circuit court and court of appeals, the State argued that the doctrine of laches prevented the defendant from seeking to withdraw his plea. The State abandoned that argument in this court. The Wisconsin Association of Criminal Defense Attorneys nevertheless filed a non-party brief addressing the doctrine of laches, arguing that the doctrine can never apply to motions under Wis. Stat. § 971.08(2).

In the circuit court and court of appeals, the state also argued that any error made by the circuit court in taking the

¶ 48. The majority's application of both statutory pleading requirements is incredibly unjust to the defendant. In all contexts, courts should strive to remove technical obstacles and enable parties to litigate their claims on the merits. But in the context of the present case, with its dramatic consequences to Negrete, the court should be particularly concerned with ensuring that both Negrete and the State have a fair opportunity to make their claims. As the United States Supreme Court recently recognized, "changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. . . . [D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."[3]

¶ 49. Instead, the majority has improperly transformed Wis. Stat. § 971.08(1)(c) and (2) into a "gotcha" game. The majority is out of step with the "entire tenor of modern law," which "is to prevent the avoidance of adjudication on the merits by resort to dependency on non-prejudicial and non-jurisdictional technicalities."[4]

defendant's plea was harmless. Before this court, the state primarily focuses on the sufficiency of the defendant's motion, not on harmless error. The circuit court and court of appeals decided the present case on harmless error, not on whether the allegations of the motion were facially sufficient.

[3] *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480 (2010) (footnote omitted).

[4] *Cruz v. DILHR*, 81 Wis. 2d 442, 449, 260 N.W.2d 692 (1978).

Wisconsin courts " 'reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome . . . .' " *Canadian Pac. Ltd. v. Omark-Prentice Hydraulics, Inc.*, 86 Wis. 2d 369, 373, 272 N.W.2d 407 (Ct. App. 1978) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

The majority creates one roadblock after another, always erring on the side of denying the defendant the minimal remedies of an opportunity to have an evidentiary hearing[5] or to re-plead.

¶ 50.  In sum, the majority unreasonably ignores and misconstrues the thrust of Negrete's motion and

---

*See also Wis. Pub. Serv. Corp. v. Arby Constr.*, 2012 WI 87, ¶ 36, 342 Wis. 2d 544, 818 N.W.2d 863.

[5] Such a hearing would not be a pointless exercise, although Negrete's lawyer and the court reporter are both deceased. For one thing, the circuit court judge who took the plea (or perhaps another judge or court staff person) could testify regarding the judge's practice regarding the warnings required by Wis. Stat. § 971.08(1)(c).

We know that numerous circuit court judges have not complied with the requirements of Wis. Stat. § 971.08(1)(c). *See, e.g., State v. Lagundoye,* 2004 WI 4, ¶ 44, 268 Wis. 2d 77, 674 N.W.2d 526 (Judge Diane S. Sykes and Judge Elsa C. Lamelas each failed to provide the required warnings); *State v. Douangmala,* 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1 (Judge Donald R. Zuidmulder failed to provide the required warnings); *State v. Vang,* 328 Wis. 2d 251, 789 N.W.2d 115 (Ct. App. 2010) (Judge Mark A. Warpinski, Jr. failed to provide the required warnings); *State v. Shampo,* No. 03–0162–CR, unpublished slip op. (Wis. Ct. App. Sept. 3, 2003) (Judge Thomas G. Grover failed to provide the required warnings); *State v. Garcia,* 2000 WI App 81, 234 Wis. 2d 304, 610 N.W.2d 180 (Judge William H. Carver failed to provide the required warnings); *State v. Lopez,* 196 Wis. 2d 725, 539 N.W.2d 700 (Ct. App. 1995) (Judge Dennis J. Flynn failed to provide required warnings); *State v. Issa,* 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994) (Judge Victor Manion failed to provide the required warnings); *State v. Chavez,* 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993) (Judge Richard G. Greenwood failed to provide the required warnings).

An evidentiary hearing could also more clearly establish the "nexus" to satisfy the stringent new requirements created by the majority opinion.

supporting affidavit. In addition, the majority deviates from the statutory text and sets forth new pleading requirements not found in Wis. Stat. § 971.08(2). It is extremely unfair for the majority to apply these new-for-2012–judicially-created pleading requirements retroactively to Negrete's motion, which was filed in 2010.

I

¶ 51.   With regard to the first pleading requirement, the majority concludes that Negrete fails to allege sufficient material facts that, if true, would entitle him to relief, because "Negrete has failed to sufficiently allege that the plea-accepting court did not tell him of the potential immigration consequences of his plea." Majority op., ¶ 3.

¶ 52.   I disagree with the majority. Negrete's motion and affidavit must be read in their entirety and together, which the majority fails to do. The motion and the affidavit were both drafted by Negrete's attorney and filed together. Together they state that Negrete unwittingly entered a plea without being informed of and understanding the immigration consequences of such a plea.[6]

¶ 53.   Negrete's motion explicitly states that "during the course of the plea colloquy the court did not inform Negrete, on the record, of the immigration consequences of his guilty plea." The motion further states that, if given the opportunity, Negrete "will

---

[6] The legislative history of 1985 Wis. Act 252, which created Wis. Stat. § 971.08(2), "indicates that the legislature sought to alleviate the hardship and unfairness involved when an alien *unwittingly* pleads guilty or no contest to a charge without being informed of the consequences of such a plea." *Chavez*, 175 Wis. 2d at 371.

testify that he did not know of the immigration consequences of his guilty plea; and, further, if he had known that he would be subject to deportation as a result of his plea he would not have entered the guilty plea." Both of these statements, if true, would entitle Negrete to relief.

¶ 54. In Negrete's affidavit filed simultaneously with his motion, Negrete avers that he "do[es] not recall the court, or [his] lawyer, ever telling [him] of this consequence of the plea." The majority describes this statement as "equivocal" and "inconclusive." Majority op., ¶¶ 6, 25.[7] But the language in the affidavit about the failure to recall cannot negate the very next sentence in the affidavit, which does not equivocate at all: "Had I known of this consequence, I would not have entered the guilty plea." This sentence in the affidavit is consistent with Negrete's allegation in his motion that "the court did not inform Negrete, on the record, of the immigration consequences of his guilty plea."[8]

---

[7] Negrete and the State dispute the meaning to be given this "I do not recall" language. Each gives a reasonable meaning to the phrase.

[8] The majority's claim that "evidentiary facts stated in an affidavit supplant allegations in a pleading" is an incomplete and incorrect statement of the law. Majority op., ¶ 35. The rule of law is that in deciding a motion for summary judgment and determining whether there is a genuine issue of material fact, a court will view the facts stated in an affidavit as supplanting or taking precedence over facts stated in a motion for summary judgment or in a pleading *to the extent that the facts stated in the affidavit are inconsistent or contrary to those in the motion or pleading. See Moutry v. Am. Mut. Liab. Ins. Co.,* 35 Wis. 2d 652, 659, 151 N.W.2d 630 (1967).

Even assuming this summary judgment rule is applicable in the present case, the facts stated in Negrete's affidavit are not inconsistent with or contrary to those stated in his motion.

¶ 55.   The majority asserts that "a defendant must affirmatively assert that the plea-accepting court did not tell the defendant of the potential immigration consequences of his plea." Majority op., ¶ 24. Negrete did just that in his motion and affidavit.

¶ 56.   To reach its contrary conclusion, the majority (and the State) pull out of context and place undue weight on a single phrase in the affidavit: "I do not recall." Majority op., ¶ 25. In light of the entirety of Negrete's statements in the motion and affidavit, the majority's reading is unreasonable and unfair.

¶ 57.   What could Negrete have alleged that would satisfy the majority? Apparently the majority would prefer that Negrete state that, although 18 years have elapsed, he remembers the plea colloquy very, very clearly and can state with absolute certainty that the circuit court did not give him the warnings required by the statute.[9] This is an unrealistic request that will only encourage "self-serving" and untrustworthy statements.[10]

¶ 58.   Everyone agrees that it is unfortunate that there is no transcript of Negrete's 1992 plea hearing. But whose fault is that? If there is "fault," it lies

[9] It is not unusual for a long time to elapse between the crime and the threat of deportation. *See* Cody Harris, Comment, *A Problem of Proof: How Routine Destruction of Court Records Routinely Destroys A Statutory Remedy*, 59 Stan. L. Rev. 1791, 1805 (2007) ("[I]t often takes more than a decade for the INS (now ICE) to initiate deportation proceedings.").

[10] *See* Harris, *supra* note 9, at 1807–09 (compiling California cases that have recognized the problems with such statements). *See also id.* at 1812 ("[I]t is difficult to imagine a scenario in which a defendant could ever prevail . . . without recourse to a plea hearing transcript, rending [sic] the remedy provided under the statute illusory for a significant number of defendants.").

somewhere in the judicial system, not with Negrete. Yet, the majority opinion places the burden caused by the missing transcript entirely on Negrete. Majority op., ¶¶ 29–33. Negrete is asked to prove by clear and convincing evidence that the warnings were not given despite not having had the opportunity to put forth any evidence beyond his written assertions that the required warnings were not given and he did not know the consequences of his plea. The majority places an insurmountable hurdle in front of Negrete.

¶ 59.  The majority puts heavy emphasis on the plea questionnaire to decide the present case against Negrete, but the fact that Negrete initialed each of the 23 items on the four-page questionnaire (in which the attorney filled in any required information), including signifying that he was advised that a guilty plea "may result" in deportation, does not supplant the statutory requirement of a colloquy on the record.[11]

¶ 60.  Our cases are clear that if there were a transcript showing a defective plea colloquy, the plea questionnaire would not suffice to prevent an eviden-

---

[11] *See State v. Hoppe*, 2009 WI 41, ¶¶ 30–33, 317 Wis. 2d 161, 765 N.W.2d 794:

> A circuit court may use the completed Plea Questionnaire/Waiver of Rights Form when discharging its plea colloquy duties. . . .
>
> A circuit court may not, however, rely entirely on the Plea Questionnaire/Waiver of Rights Form as a substitute for a substantive in-court plea colloquy. . . .
>
> Although we do not require a circuit court to follow inflexible guidelines when conducting a plea hearing, the Form cannot substitute for a personal, in-court, on-the-record plea colloquy between the circuit court and a defendant.

*See also Issa*, 186 Wis. 2d at 208–09 (plea questionnaire admitting being given immigration warnings does not satisfy the requirements of Wis. Stat. § 971.08(1)(c)).

tiary hearing. The court has held that a plea question-naire cannot substitute for a personal, in-court, on-the-record colloquy.[12] Yet in the instant case the majority allows the plea questionnaire to cure an alleged defect in a non-existent transcript. The majority's reasoning and result do not comport with our precedent.

¶ 61.   I conclude that Negrete's motion and affida-vit, read in their entirety and together, allege sufficient facts to support Negrete's claim that his plea colloquy was deficient. Negrete's claim, if true, would entitle him to relief.[13]

---

[12] *See Hoppe*, 317 Wis. 2d 161, ¶ 47; *Issa*, 186 Wis. 2d at 208–09.

In California, a state the majority uses as support, majority op., ¶ 24, when there is no transcript or other court documen-tation regarding the plea hearing, a statute provides that the defendant is "presumed not to have received the required advisement." The cases conclude that the presumption is rebut-table. The prosecution bears "the burden to prove by a prepon-derance of the evidence that the required advisements were given." *People v. Arriaga*, 133 Cal. Rptr. 3d 807, 813 (2011) (citing *People v. Dubon*, 108 Cal. Rptr. 2d 914 (2001)).

[13] The majority opinion uses an inappropriate analytical framework. It erroneously concludes that because *Bangert* does not apply, *Bentley* automatically does. *See State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986); *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

The State's brief argues that the defendant's motion fails under either the *Bangert* framework or the *Bentley* framework.

The decision of the court of appeals cited only *Bangert*.

Contrary to the majority's assertion, however, the instant case is neither a *Bangert* nor a *Bentley* case. It does not fit neatly into either framework. It is not a *Bangert* case because there is no transcript. And it is not a *Bentley* case because the defendant does not contend that there was an extrinsic cause for the defective plea other than a defective colloquy.

## II

¶ 62.  Wisconsin Stat. § 971.08(2) also requires that the defendant show "that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization."

¶ 63.  Negrete's motion stated the offense for which he entered the plea (second degree sexual assault) and then asserted that he is "now the subject of deportation proceedings."

¶ 64.  Neither the State nor Negrete argued that the motion or affidavit was defective with regard to the requirement that the defendant state that the plea is "likely to result in the defendant's deportation." Both the State and Negrete obviously read the motion and affidavit as declaring that Negrete's conviction for second degree sexual assault was the reason he was likely to be subject to deportation proceedings. The State's and Negrete's reading of the motion and affidavit is reasonable and should be accepted for purposes of interpreting and testing the sufficiency of Negrete's motion.

¶ 65.  Yet, Negrete's motion does not satisfy the majority.

¶ 66.  First, the majority opinion declares that a defendant's motion must "allege facts demonstrating a causal nexus between the entry of the guilty or no contest plea at issue and the federal government's likely institution of adverse immigration actions consistent with § 971.08(1)(c)." Majority op., ¶ 26.

¶ 67.  It is unnecessary for the majority to replace the statutory language, which is that the defendant show "that the plea is likely to result in the defendant's

_____

By applying the *Bentley* analysis, the majority has forced a square peg into a round hole.

deportation, exclusion from admission to this country or denial of naturalization." Wis. Stat. § 971.08(1)(c). Further, it is not clear that the majority's replacement language fits all the circumstances that come within the statute. For example, must a defendant show "the federal government's likely institution of adverse immigration actions" in order to demonstrate that the plea is likely to result in the defendant's denial of naturalization?

¶ 68.   The majority goes on to depart further from the text of the statute and sets forth specific ways in which a defendant may satisfy the majority's rephrasing of the statutory pleading requirement. *See* majority op., ¶¶ 26–27.

¶ 69.   The majority sums up the newly created requirements as follows:

> [A] defendant may set forth the crime of conviction, the applicable federal statutes establishing his potential deportability, and those facts admitted in his plea that bring his crime within the federal statutes. In so doing, a defendant may submit some written notification that the defendant has received from a federal agent that imports adverse immigration consequences because of the plea that was entered; or, a defendant may narrate verbal communications that the defendant has had with a federal agent advising that adverse immigration consequences were likely and that such consequences were tied to the crime for which the plea was entered.[14]

¶ 70.   The majority opinion has, without question, rewritten Wis. Stat. § 971.08(2).

¶ 71.   The statute says nothing about a defendant setting forth the crime for which he was convicted. The statute says nothing about reciting the applicable federal statutes. The statute says nothing about reciting a legal argument that the facts admitted in his plea

---

[14] Majority op., ¶ 37.

conform to the federal deportation statutes.[15] The statute says nothing about submitting written notifications or narrating verbal communications.

¶ 72. Some of these details would seem more fitting as legal argument in a memorandum in support of a motion or a pleading, as opposed to appearing in the motion or pleading itself.

¶ 73. Although the majority uses the word "may" in describing its new requirements, the result for the defendant in the present case makes clear that, in fact, a defendant *must* meet the majority's new requirements.

¶ 74. The statute requires the defendant to allege merely that "the plea is *likely* to result in the defendant's deportation" (emphasis added). The majority has transformed the statute and now requires the defendant to allege something much more than "likely." The majority reads a more absolute requirement into the statute, namely, that the defendant has already been notified that he or she *will* be deported.[16]

---

[15] Fortunately the majority opinion does not go on to declare, without briefs, the meaning of the phrase "aggravated felony" in the federal deportation statutes. Majority op., ¶ 27 n.8.

For a discussion of the expanding meaning of "aggravated felony" over the years to include many garden variety state law crimes, see Harris, *supra* note 9, at 1796–98. For a discussion of recent cases in which second degree sexual assaults have been found to be crimes of violence and therefore aggravated felonies under the immigration statute, see Elizabeth D. Lauzon, *What Constitutes "Aggravated Felony" for Which Alien Can be Deported or Removed Under § 237(a)(2)(A)(iii) of Immigration and Nationality Act (8 U.S.C.A. § 1227(a)(2)(A)(iii))—Crime of Violence Under 8 U.S.C.A. § 1101(a)(43)(F)*, 50 A.L.R. Fed. 2d 443, §§ 27–28 (2010).

[16] The only thing short of demonstrating certain deportation that might satisfy the majority is detailed briefing, con-

¶ 75. There are several ways a defendant may show that the plea is "likely to result in the defendant's deportation," at the appropriate stage of the proceedings. The majority's extremely detailed pleading requirements do not appear in the statute and in all likelihood are not the only ways in which a defendant may satisfy the plain language of the statute.

¶ 76. No case prior to today has interpreted Wis. Stat. § 971.08(2) to require a defendant to satisfy any of the specific, detailed requirements set forth by the majority opinion. Negrete did not have notice of the new judicially created "refer-to-and-explain-the-federal-deportation-statutes" or the "submit-written-notification-or-narrate-verbal-communications" pleading requirements.

¶ 77. If I were to agree with the new pleading requirements created by the majority, and I do not, I would allow the defendant to re-plead. The majority's retroactive application of its 2012 newly created pleading requirements, which are not supported by the statute, offends the most basic sense of fair play and due process.

¶ 78. Negrete never got notice of these new pleading requirements. Negrete never had a chance to comply with these requirements. If the court adopts new pleading requirements, it should, at a minimum, give a defendant notice and an opportunity to re-plead under the new requirements.

¶ 79. The majority's retroactive application approach also conflicts with Wis. Stat. § 802.09, which embodies Wisconsin's tradition of liberal amendment of

tained within a pleading, discussing how the conviction fits within the federal deportation statutes. Wisconsin Stat. § 971.08(2) does not require such detail.

pleadings.[17] Wisconsin Stat. § 802.09 provides that leave to amend pleadings "shall be freely given at any stage of the action when justice so requires."[18] "[Wisconsin Stat. § 802.09] is intended to facilitate the disposition of litigation on the merits and to subordinate the importance of pleadings. It provides maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."[19]

¶ 80. Moreover, the majority opinion violates a basic rule of appellate review by bypassing the adversary process and raising and deciding a question on its own.[20] The majority has gone well beyond the parties'

---

[17] *See, e.g., Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, ¶¶ 25–26, 303 Wis. 2d 94, 735 N.W.2d 418.

It is longstanding uncontroverted law that a court abuses its discretion in refusing to allow an amendment of a pleading "[w]hen it appears that an omission . . . is material, . . . and that such omission or failure is through mistake, inadvertence, surprise, or excusable neglect." *Wiegel v. Sentry Indem. Co.*, 94 Wis. 2d 172, 184–85, 287 N.W.2d 796 (1980) (quoting *Wipfli v. Martin*, 34 Wis. 2d 169, 173–74, 148 N.W.2d 674 (1967)).

[18] Although a motion is not a pleading, the Wis. Stat. § 802.09 directive to freely give leave to amend pleadings has been applied to motions. *See State v. Sutton*, 2012 WI 23, ¶ 22, 339 Wis. 2d 27, 810 N.W.2d 210.

*See also* Wis. Stat. § 972.11(1) (providing that with some exceptions, "rules of . . . practice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction").

[19] 3 Jay E. Grenig, *Wisconsin Practice Series: Civil Procedure* § 209.1 (4th ed. 2010)).

[20] "As various members of this court have said, we should not 'reach out and decide issues' that were not presented to the court by the parties." *Dairyland Greyhound Park, Inc., v. Doyle*, 2006 WI 107, ¶ 335, 295 Wis. 2d 1, 719 N.W.2d 408 (Roggensack, J., concurring in part and dissenting in part) (quoting

---

40

arguments and has concocted numerous ways in which Negrete's motion is defective. While the State, like the majority, did fixate on the words "do not recall" in Negrete's affidavit in support of his motion, the State did not raise the "nexus" issue that the majority treats as equally fatal to Negrete's motion. The "nexus" issue, which the majority discusses and analyzes in detail, has not been briefed by either the State or Negrete.

¶ 81. The motion and affidavit, in my opinion, satisfy the requirement in Wis. Stat. § 971.08(2) · that "the plea is likely to result in the defendant's deportation." If the majority insists on rewriting the statute, Negrete should be given a chance to amend his 2010

*Town of Beloit v. Cnty. of Rock*, 2003 WI 8, ¶ 72, 259 Wis. 2d 37, 657 N.W.2d 344 (Abrahamson, C.J., dissenting)).

*See also State v. Thompson*, 2012 WI 90, ¶¶ 9, 57, 342 Wis. 2d 674, 818 N.W.2d 904 (declaring that the court should not decide issues that are not briefed).

The United States Supreme Court has often explained the fundamental importance of the adversarial presentation of issues. *See, e.g., Penson v. Ohio*, 488 U.S. 75, 84 (1988) ("This system is premised on the well-tested principle that truth—as well as fairness—is 'best discovered by powerful statements on both sides of the question.' " (citations omitted)); *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."); *Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("[O]ur legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error . . . .").

Scholars have made similar observations. *See, e.g.*, Stephan Landsman, *Readings on Adversarial Justice: The American Approach to Adjudication* (1988); Jerold H. Israel, *Cornerstones of the Judicial Process*, Kan. J.L. & Pub. Pol'y, Spring 1993, at 5; Ellen E. Sward, *Values, Ideology and the Evolution of the Adversary System*, 64 Ind. L.J. 301, 316–19 (1989).

motion to meet the majority's new judicially created 2012 pleading requirements.

* * * *

¶ 82.  For the reasons set forth, I conclude, based on the plain text of Wis. Stat. § 971.08(2), that Negrete's motion in the present case was sufficient to earn Negrete an opportunity for an evidentiary hearing or for re-pleading.

¶ 83.  For the reasons set forth, I dissent.

¶ 84.  I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.