# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP678, 2014AP279 & 2014AP680 |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Melisa Valadez, |
| |         Defendant-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS
(No Cites)

| | |
|---|---|
| OPINION FILED: | January 28, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Walworth |
|   JUDGE: | David M. Reddy |

| | |
|---|---|
| JUSTICES: | |
|   CONCUR & DISSENT: | Ziegler, J. joined by Gableman, J. |
|   DISSENTED: | Prosser, J. joined by Roggensack, C.J. |
|   NOT PARTICIPATING: | R. Bradley, J. |

ATTORNEYS:

For the defendant-appellant, there were briefs by *David Ziemer*, Glendale, and *Marc E. Christopher* and *Christopher Law Office, LLC*, Milwaukee and oral argument by *Marc E. Christopher*.

For the plaintiff-respondent, the cause was argued by *Nancy A. Noet*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2016 WI 4**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP678, 2014AP679 & 2014AP680
(L.C. No. 2005CF83, 2005CM257 & 2004CM245)

STATE OF WISCONSIN      :     IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

  **v.**

**Melisa Valadez,**

      **Defendant-Appellant.**

**FILED**

**JAN 28, 2016**

Diane M. Fremgen
Clerk of Supreme Court

---

APPEAL from an order of the Circuit Court for Walworth County, David M. Reddy, Judge. *Reversed and remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. This case involves the intersection of Wisconsin criminal law and federal immigration law.[1]

---

[1] For general primers on various aspects of the intersection of criminal law and immigration law, see Margaret Colgate Love, Jenny Roberts & Cecelia Klingele, Collateral Consequences of Criminal Convictions: Law, Policy and Practice §§ 2:46-:60 (2013 ed.); Dan Kesselbrenner, Lory D. Rosenberg & Maria Baldini-Potermin, Immigration Law & Crimes (2015 ed.).

(continued)

¶2    This is an appeal from an order of the Circuit Court for Walworth County, David M. Reddy, Judge.  The circuit court denied the motion of the defendant, Melisa Valadez, to withdraw her guilty pleas.

¶3    Ms. Valadez's motion to withdraw her guilty pleas is based on Wis. Stat. § 971.08(2) (2011-12).[2]  Before we examine § 971.08(2), we examine § 971.08(1)(c).  Wisconsin Stat. § 971.08(1)(c) requires that before a circuit court accepts a plea of guilty or no contest, the circuit court "shall . . . [a]ddress the defendant personally and advise the defendant as follows:  'If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.'"

¶4    The circuit court's colloquies with Ms. Valadez did not adhere to this statute.  Judge John R. Race and Judge Robert J. Kennedy presided over the criminal proceedings in which Ms. Valadez entered guilty pleas.  Neither of the circuit courts

---

For information supplied by the federal agency responsible for naturalization, see U.S. Customs & Immig. Serv., Citizenship Through Naturalization, http://www.uscis.gov/us-citizenship/citizenship-through-naturalization.  For information regarding prosecutorial discretion in deportation cases, see U.S. Immigration and Customs Enforcement, Immigration Action, https://www.ice.gov/immigrationAction.

[2] All subsequent references to the Wisconsin Statutes are to the 2011—12 version unless otherwise indicated.

2

advised Ms. Valadez of the immigration consequences of a guilty plea as required by Wis. Stat. § 971.08(1)(c).

¶5 If a circuit court fails to advise a defendant of the immigration consequences (as required by Wis. Stat. § 971.08(1)(c)) and if the defendant shows that the plea is "likely" to result in the defendant's deportation,[3] exclusion from admission to this country, or denial of naturalization, the circuit court must ("shall") permit withdrawal of the plea and permit the defendant to enter another plea.

¶6 Section 971.08(2) provides as follows:

(2) If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

¶7 The court of appeals certified the instant case to this court pursuant to Wis. Stat. § (Rule) 809.61.

¶8 The appeal presents two questions:

    1. Did Melisa Valadez's motion to withdraw her pleas of guilty satisfy the "likely" statutory criterion in Wis. Stat. § 971.08(2) for mandatory vacation of the judgments of conviction, that is, did she show that

---

[3] Federal statutes refer to deportation as "removal." See Padilla v. Kentucky, 559 U.S. 356, 364 n.6 (2010). We use the terms "removal" and "deportation" interchangeably.

3

her guilty pleas were "likely" to result in her exclusion from admission to this country?[4]

2. Is there a time limit for a defendant to file a motion to withdraw a plea based on Wis. Stat. § 971.08(2)?[5] The court of appeals further inquired: "How would such a time limit fit in with the possible need to await actual deportation proceedings before moving to withdraw the plea?"

_____

[4] The court of appeals framed the issue as follows: "How definite or imminent must deportation be in order for it to be 'likely' such that a defendant may withdraw a guilty or no contest plea on the basis that he or she was not informed of the immigration consequences at the plea colloquy?"

The circuit court and court of appeals focused predominantly on deportation, although they occasionally referred to the other two immigration consequences——exclusion from admission to this country and denial of naturalization.

We restate the issue to reflect the key arguments of the parties in this court. Both parties briefed the immigration consequence of deportation, and Ms. Valadez briefed the consequence of denial of naturalization. However, especially in oral argument, the parties focused on Ms. Valadez's likely exclusion from admission as the ground for withdrawing her pleas, not deportation or denial of naturalization. This court does not have to reach the issues of either deportation or denial of naturalization because Ms. Valadez has met the burden of proving that exclusion from admission is likely.

Deportation has been addressed by this court in State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749; State v. Shata, 2015 WI 74, 364 Wis. 2d 63, 868 N.W.2d 93; and State v. Ortiz-Mondragon, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717.

[5] See State v. Romero-Georgana, 2014 WI 83, ¶67 n.14, 360 Wis. 2d 522, 849 N.W.2d 668.

¶9   In response to the first question, for the reasons set forth, we conclude that Ms. Valadez has demonstrated that the circuit court did not comply with Wis. Stat. § 971.08(1)(c) and that her guilty pleas are "likely" to result in her exclusion from admission to this country.  Because Ms. Valadez has shown that her guilty pleas are "likely" to result in her exclusion from admission to this country, we need not reach the question of whether her pleas are also "likely" to result in deportation or denial of naturalization.  Accordingly, we reverse the order of the circuit court and remand the cause to the circuit court to vacate the judgments of conviction and to permit Ms. Valadez to withdraw her guilty pleas and enter new pleas.

¶10 The court of appeals raised the second question because although the majority opinion in State v. Romero-Georgana, 2014 WI 83, ¶67 n.14, 360 Wis. 2d 522, 849 N.W.2d 668, did not adopt a time limit on a Wis. Stat. § 971.08(2) motion, it strongly suggested that (at least in certain circumstances) there should be a time limit.[6]

¶11 We do not respond to the second question.  Although both parties discussed the time limit issue in their briefs, neither party argued in this court for a time limit for plea withdrawal under Wis. Stat. § 971.08(2), and both parties agreed that even if the court were to adopt a time limit, Ms. Valadez's motion is timely.  At oral argument, the State conceded it was

---

[6] The motion in Romero-Georgana was not a Wis. Stat. § 971.08(2) motion; it was a § 974.06 motion.

5

not arguing for a time limit on motions under Wis. Stat. § 971.08(2), and even if the court were to adopt a time limit, Ms. Valadez's motion was timely.[7]

¶12 In Romero-Georgana, the court noted that four months before the defendant's postconviction motion under Wis. Stat. § 974.06 was filed, the federal government had started an

---

[7] The following exchange between Justice Ann Walsh Bradley and the assistant attorney general representing the State is informative:

Justice Ann Walsh Bradley: I have a question . . . . As I read on page 13 of your brief going on to page 14 it says, "like many similar defendants, Valadez did not pursue additional post-conviction relief beyond the motions underlying this consolidated appeal." Next sentence. "Even if she had, however, her [Wis. Stat. §] 971.08(2) claims should not be barred later because they are not yet viable." I saw that with some dissonance to footnote 14 in our Romero-Georgana case. I mean——I don't think you're embracing the time limit suggested for a 971.08(2).

Assistant Attorney General: No, I'm not, and I don't——I certainly don't think it's operable here. As the court pointed out earlier, the defendant in Romero-Georgana had filed several post-conviction motions already on notice, because he had been served with a detainer from Homeland Security that he was subject to immigration proceedings. So with knowledge of a ripe claim he sat on it. And that's what I think Romero-Georgana in that footnote speaks to and that's certainly not what's going on here.

Justice Ann Walsh Bradley: And you are not advocating that there be a time limit. Is it correct you are not advocating that there be a time limit imposed on 971.08(2) claims? Is that correct?

Assistant Attorney General: Yes.

6

investigation into the defendant's deportability.[8] Nevertheless, the defendant in Romero-Georgana pressed forward with his Wis. Stat. § 974.06 motion, without bringing a Wis. Stat. § 971.08(2) motion, and without asking the court to construe the Wis. Stat. § 974.06 motion as a Wis. Stat. § 971.08(2) motion.[9]

¶13 Under those circumstances, the Romero-Georgana court expressed concern about judicial efficiency, stating that "[w]hen a defendant has notice that he is likely to be deported and subsequently brings postconviction claims unrelated to Wis. Stat. § 971.08(2), we think it would be unwise to allow him to bring his claim as a § 971.08(2) motion at a later time, although he may be able to bring his claim as a Wis. Stat. § 974.06 motion if he has a sufficient reason for the delay."[10]

¶14 The circumstances that concerned the court in Romero-Georgana are not at issue here. Ms. Valadez has not brought other postconviction motions. Ms. Valadez has not, with notice of a ripe claim, sat on her rights. Moreover, neither Ms. Valadez's counsel nor the State argued for a time limit on Wis. Stat. § 971.08(2) motions, and the State conceded that Ms. Valadez's motion would be timely even under the time limit suggested in Romero-Georgana.

---

[8] Romero-Georgana, 360 Wis. 2d 522, ¶67 n.14.

[9] Id.

[10] Id.

¶15 Because the parties agree and do not present adversarial positions, we do not address the second question.[11]

I

¶16 The facts are not in dispute for purposes of this appeal.

¶17 The defendant, Melisa Valadez, is not a citizen of the United States.  She became a Lawful Permanent Resident (LPR) in 2001, when she was 15 years old.  Her three children were born in the United States.

¶18 Ms. Valadez was convicted in 2004 and 2005 (when she was 19 years old) of possession of cocaine, possession of THC, and possession of drug paraphernalia in three separate cases on pleas of guilty.[12]  To the extent it may be relevant under federal immigration law,[13] the offenses underlying the first two cases——possession of cocaine, two counts of possession of THC, and two counts of possession of drug paraphernalia——occurred when Ms. Valadez was 18 years old.  The offense underlying the

---

[11] See State v. Denk, 2008 WI 130, ¶32 n.5, 315 Wis. 2d 5, 758 N.W.2d 775 (stating that while the court of appeals' certification included several additional questions, "[t]hese questions are tangential to our inquiry . . . ."); State v. Popanz, 112 Wis. 2d 166, 168 n.3, 332 N.W.2d 750 (1983) (refusing to answer a second certified question because the case was resolved on other grounds)

[12] On Ms. Valadez's motion, the court of appeals consolidated the three cases to facilitate briefing and disposition.

[13] See, e.g., 8 U.S.C. §§ 1182(a)(2)(A)(ii)(I), 1227(a)(2)(A)(i).

third case, possession of THC as a repeater, occurred when she was 19 years old.

¶19 The transcripts of the plea hearings clearly show that the circuit court failed to warn Ms. Valadez, as required by Wis. Stat. § 971.08(1)(c), that her pleas and subsequent convictions may have immigration consequences.

¶20 As a result of these convictions, Ms. Valadez served jail time and was placed on probation. She was ordered to pay fines, have an AODA assessment, and get alcohol counseling. She has fulfilled all the conditions imposed by the circuit courts and has had no subsequent convictions in the decade since these 2004-2005 convictions.

¶21 In 2013, Ms. Valadez filed a motion under Wis. Stat. § 971.08(2) to withdraw her guilty pleas, arguing that as a result of the convictions she is unable to renew her LPR card; she is subject to deportation; she likely would be excluded from admission to the United States if she left the country; and she likely would be denied naturalization if she applied to become a naturalized American citizen.

¶22 At the initial hearing on Ms. Valadez's motion to withdraw her plea, the circuit court granted her additional time to attempt to acquire an affidavit or some narrative of verbal communications with a federal agent in order to meet the requirements of this court's decision in State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749.

¶23 To supplement Ms. Valadez's initial brief, defense counsel submitted e-mail communications between counsel and an

9

Immigration and Customs Enforcement (ICE) Special Agent. The e-mails were introduced apparently to confirm a telephone call between defense counsel and the ICE Special Agent regarding immigration law and enforcement practices. The e-mails did not confirm or challenge defense counsel's views of immigration law.

¶24 Citing Negrete (especially footnote 8), the circuit court denied Ms. Valadez's motion to withdraw her pleas. Footnote 8 in Negrete states as follows:

> More specifically, if a defendant chooses to establish that the crime to which the defendant pleaded is one for which the defendant would have been subject to potentially adverse immigration consequences under controlling federal law, the defendant should cite the federal law upon which reliance is placed. For example, under federal law, 8 U.S.C. § 1227 (2006) delineates numerous categories of aliens who are potentially deportable. Relevant to motions under Wis. Stat. § 971.08(2) is the federal statute providing that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). See State v. Baeza, 174 Wis. 2d 118, 127, 496 N.W.2d 233 (Ct. App. 1993).
>
> In addition, in such a motion, a defendant should allege that the federal government has conveyed its intent to impose one of the enumerated immigration consequences set out in Wis. Stat. § 971.08(2). This required nexus between the crime to which a plea was made and adverse immigration consequences can be demonstrated by alleging facts that show that, because of his plea, the defendant has become subject to deportation proceedings, has been excluded from admission to the country, or has been denied naturalization.

Negrete, 343 Wis. 2d 1, ¶27 n.8.

¶25 Relying on footnote 8 in Negrete, the circuit court reasoned that Ms. Valadez had not met the statutory standard of

10

"likely" to suffer the enumerated immigration consequences, because she is not presently the object of a proceeding for deportation, exclusion from admission, or denial of naturalization. The circuit court concluded the hearing stating: "Gratuitously, I will say that I think that this area is ripe for some clarification from the appellate court."

¶26 The court of appeals certified the instant case to this court. The court of appeals wrote that the "degree of certainty necessary to show, for purposes of plea withdrawal under Wis. Stat. § 971.08(2), that a defendant is likely to suffer immigration consequences as a result of a guilty plea is not clear under existing case law."

## II

¶27 This case requires us to interpret and apply Wis. Stat. § 971.08(2) to the undisputed facts. The interpretation and application of a statute to undisputed facts are ordinarily questions of law which this court determines independently of the circuit court and court of appeals, but benefiting from their analyses.[14] We begin with the text of the statute and examine case law interpreting and applying the statute.

## III

¶28 In order to withdraw a guilty or no contest plea under Wis. Stat. § 971.08(2), the statute requires a defendant to

---

[14] State v. Negrete, 2012 WI 92, ¶15, 343 Wis. 2d 1, 819 N.W.2d 749; State v. Bobby G., 2007 WI 77, ¶42, 301 Wis. 2d 531, 734 N.W.2d 81.

11

allege: (1) that the circuit court "fail[ed] to advise [the] defendant as required by [Wis. Stat. § 971.08(1)(c)]"; and (2) that the defendant's plea "is likely to result in the defendant's deportation, exclusion from admission to this country, or denial of naturalization . . . ."[15]

¶29 No one disputes that Ms. Valadez has met the first requirement. Transcripts of the plea colloquies are available; the circuit courts did not provide the immigration warning required under Wis. Stat. § 971.08(1)(c). As case law demonstrates, it is of utmost importance that circuit courts adhere to § 971.08(1)(c) in plea colloquies.

¶30 At issue is whether Ms. Valadez showed that her guilty pleas are "likely" to result in one of the enumerated immigration consequences. If Ms. Valadez makes this showing, she may withdraw her pleas and enter new ones, irrespective of whether she was otherwise aware of such consequences. State v. Douangmala, 2002 WI 62, ¶¶22-25, 42, 253 Wis. 2d 173, 646 N.W.2d 1.

¶31 Ms. Valadez was convicted more than 10 years ago for violations of laws relating to controlled substances. She does not allege she is the subject of a deportation proceeding. According to the record, the federal government has not taken any steps to deport her and has not manifested any intent to deport her.

---

[15] Wis. Stat. § 971.08(2) (emphasis added). See also State v. Negrete, 2012 WI 92, ¶23, 343 Wis. 2d 1, 819 N.W.2d 749.

12

¶32 Ms. Valadez's case was not presented in this court, however, as solely a deportation case. Ms. Valadez argues that unlike many who seek to vacate guilty pleas by merely claiming they are "likely" to be deportable, she is claiming that she is "likely" to be excluded from admission.

¶33 Ms. Valadez claims that even though she is a Lawful Permanent Resident, if she were to leave the United States and seek to return, she would be excluded from admission as a result of her convictions. She cites 8 U.S.C. 1182(a)(2)(A)(i)(II) to support her claim.[16]

---

[16] See 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2012), providing:

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . . .

(2) Criminal and related grounds

(A) Conviction of certain crimes

(i) In general

Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of-

. . . .

(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign

(continued)

13

¶34 The State argues that Ms. Valadez's reliance on the federal statutes that render her excluded from admission is misplaced. According to the State, what would happen *if* Ms. Valadez left the country and was excluded from admission does not prove that she is likely to be excluded from admission.

¶35 Quoting extensively from the Negrete decision, the State contends that Ms. Valadez has not met the burden set forth in Negrete: She has failed, according to the State, to allege facts showing that she is "likely" to be excluded from admission.

¶36 Because Negrete interpreted Wis. Stat. § 971.08(2), we examine Negrete. Negrete is distinguishable and does not govern the instant case. The Negrete case governs a non-citizen's motion to withdraw a guilty plea under Wis. Stat. § 971.08(2) based on "likely" deportation. Although Negrete refers to the other immigration consequences enumerated in Wis. Stat. § 971.08(2)——"likely" exclusion from admission to this country or "likely" denial of naturalization[17]——Negrete was a deportation

---

country relating to a controlled substance (as defined in section 802 of Title 21),

is inadmissible.

[17] Negrete, 343 Wis. 2d 1, ¶5 n.5.

In two other cases, the court has addressed deportation. The cases address ineffective assistance of counsel. Ineffective assistance of counsel is not involved in the instant case.

(continued)

14

case, and the standard it sets forth governs deportation; it does not govern "likely" exclusion from admission.

¶37 In Negrete, the defendant pleaded guilty in 1992 to one count of second-degree sexual assault of a person under the age of 16, in violation of Wis. Stat. § 948.02(2) (1991-92).[18] No transcript of the plea colloquy was available.[19]

¶38 Negrete sought to withdraw his guilty plea in 2010, citing Wis. Stat. § 971.08(2). Negrete alleged in his motion to

---

In State v. Shata, 2015 WI 74, ¶¶59-61, 364 Wis. 2d 83, 868 N.W.2d 93, a case involving deportation and ineffective assistance of counsel, this court noted that although a person convicted of a violation of laws relating to controlled substances is deportable, "such a conviction will not necessarily result in deportation." The court concluded that defense counsel did not render defective performance in advising the defendant that his plea carried a strong chance of deportation. Shata, 364 Wis. 2d 83, ¶79.

In State v. Ortiz-Mondragon, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717, a case involving deportation and ineffective assistance of counsel, Ortiz-Mondragon pleaded no contest to felony battery. He failed to show that defense counsel rendered deficient service when defense counsel conveyed the information regarding immigration consequences contained in the plea questionnaire and waiver of rights form.

[18] Negrete, 343 Wis. 2d 1, ¶5.

[19] Negrete, 343 Wis. 2d 1, ¶1. In Negrete, because no transcript was available, the court turned to State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and concluded that Negrete failed to sufficiently allege that the plea-accepting court did not tell him of the potential immigration consequences of his plea. In the present case, the transcripts of the plea colloquies are available and clearly show the circuit court failed to give the required warnings. As a result, the "Bentley-type" analysis conducted in Negrete is unnecessary here. Negrete, 343 Wis. 2d 1, ¶33.

15

withdraw his plea that the circuit court did not inform him of the potential immigration consequences of his plea. In contrast, Negrete's affidavit stated that he "'d[id] not recall' whether he received the necessary warning."[20]

¶39 Based on the equivocal assertions in the defendant's motion and affidavit, the Negrete court concluded that Negrete had not sufficiently alleged that the circuit court failed to advise him of the potential immigration consequences of his plea.[21] Despite this ground for denying Negrete's motion, the Negrete court moved on to discuss the "likely" prong of Wis. Stat. § 971.08(2).

¶40 Negrete's motion alleged that he was "now the subject of deportation proceedings."[22] Negrete's affidavit alleged that he was "now subject to deportation proceedings."[23] The Negrete court concluded that Negrete's "[b]are allegations of possible deportation" were insufficient to show his plea was "likely" to result in deportation.[24]

¶41 In deportation proceedings, immigration officials seek out those who are deportable. Given the role of immigration officials in seeking out those who are deportable, the Negrete

---

[20] Negrete, 343 Wis. 2d 1, ¶35.

[21] Id., ¶25.

[22] Id., ¶¶15, 36 (emphasis added).

[23] Id., ¶2 (emphasis added).

[24] Id., ¶¶26, 36.

16

court held that Negrete's equivocal assertion that he was "subject to" or "subject of" deportation was not sufficient to show he was actually "likely" to be deported or that deportation would be the result of the criminal offense.[25] Negrete had to allege facts demonstrating a causal nexus between the entry of the guilty plea and the federal government's likely institution of deportation proceedings.[26] Bare allegations were not sufficient.

¶42 In contrast to deportation, a non-citizen would have to take affirmative steps in order to induce the federal government to exclude the non-citizen from admission to the United States. The federal government does not seek out individuals who may be excluded from admission or otherwise inform non-citizens that they may be excluded from admission to this country based on convictions for violating laws relating to controlled substances.

¶43 Instead, the federal government, through the statutes governing admission to this country, excludes only non-citizens with convictions for violating laws relating to controlled substances who affirmatively seek admission to the country.

---

[25] Compare Negrete, 343 Wis. 2d 1, ¶¶5, 36 (quoting Negrete's motion, which stated that he was "now 'the subject of deportation proceedings'") (emphasis added), with Negrete, 343 Wis. 2d 1, ¶2 (stating that "Negrete's affidavit also states that he is now subject to deportation proceedings.") (emphasis added).

[26] Negrete, 343 Wis. 2d 1, ¶26.

Short of Ms. Valadez taking the affirmative step of leaving the United States and actually being excluded from admission, Ms. Valadez has no way aside from the immigration and naturalization statutes to demonstrate that she is "likely" to be excluded from admission.

¶44 Ms. Valadez's convictions are, as stated previously, explicitly listed in federal statutes as grounds for exclusion from admission. Based on the federal statutes, if Ms. Valadez leaves the United States and attempts to gain readmission to this country, the federal government will "likely" exclude her from admission because of her convictions.

¶45 The circuit court mistakenly required Ms. Valadez to show that the federal government has taken steps to exclude her from admission. Section 971.08(2) does not require such a showing. The statute requires only that a defendant show that such a consequence is "likely." Here the text of the federal statute and the necessity that a defendant take affirmative steps to leave the country in order to actually be excluded from admission satisfy the "likely" test. In other words, the immigration and naturalization statutes demonstrate the likelihood that Ms. Valadez will be excluded from admission.

¶46 Requiring Ms. Valadez to leave the country and seek readmission to demonstrate that she is "likely" to be excluded from admission is the equivalent of asking her to demonstrate exclusion from admission to 100% certainty. Wisconsin Stat. § 971.08(2) requires an immigration consequence be "likely," not "certain."

18

¶47  When questioned at oral argument about exclusion from admission, the State conceded that "given her convictions, [Ms. Valadez] is inadmissible," but attempted to distinguish between her being inadmissible under the law and her actually being excluded from admission.

¶48  We are not persuaded by this distinction.  Ms. Valadez has demonstrated that she will, as a matter of federal law, be excluded from admission should she take the affirmative step of leaving the country.  She has thus shown she is likely to be excluded from admission.

¶49  The Wisconsin legislature afforded relief to a defendant "likely" to be excluded from admission.  Wisconsin Stat. § 978.02 does not require a defendant to show that he or she actually has been excluded from admission or that the federal government has manifested its intent to exclude the defendant from admission other than through the federal law providing for exclusion from admission.

¶50  To hold that Ms. Valadez cannot withdraw her guilty pleas because the federal government has not excluded her from admission is, as a matter of practicality, unworkable and effectively expunges an enumerated consequence—exclusion from admission—from Wis. Stat. § 971.08(2).[27]

---

[27] "[S]tatutes are interpreted to avoid surplusage, giving effect to each word."  State v. Hemp, 2014 WI 129, ¶13, 359 Wis. 2d 320, 856 N.W.2d 811.

19

¶51 We are convinced that if Ms. Valadez left the United States she would, as a matter of law, be excluded from admission. As a result, we are persuaded that it is "likely" that her guilty pleas will "result in [her] . . . exclusion from admission." To deny Ms. Valadez the opportunity to withdraw her pleas would render relief under the statutes illusory.

¶52 Because Ms. Valadez has met her burden of showing her guilty pleas are "likely" to result in her exclusion from admission to this country, we need not reach the question of whether her pleas are also "likely" to result in deportation or denial of naturalization.

¶53 In sum, Ms. Valadez has fulfilled the statutory requirements for withdrawing her pleas. The circuit court failed to give the warning required by Wis. Stat. § 971.08(1)(c) and Ms. Valadez's guilty pleas are "likely" to result in her exclusion from admission. Wis. Stat. § 971.08(2).

¶54 Accordingly, we reverse the order of the circuit court denying Ms. Valadez's motion to withdraw her guilty pleas. We remand the matter to the circuit court with directions to vacate the judgments of conviction and permit Ms. Valadez to withdraw her guilty pleas and enter other pleas.

¶55 *By the Court.*—The order of the circuit court is reversed and the cause is remanded.

¶56 REBECCA G. BRADLEY, J., did not participate.

¶57 ANNETTE KINGSLAND ZIEGLER, J. *(concurring in part, dissenting in part).* I join the opinion of the court and its conclusion to reverse the order of the circuit court. I agree that under the specific facts of this case, and based on the arguments raised, Valadez has established that her pleas are likely to result in her exclusion from admission to this country.

¶58 I do not join the decision to "remand the cause to the circuit court to vacate the judgments of conviction and to permit Ms. Valadez to withdraw her guilty pleas and enter new pleas," majority op., ¶9, because there may be other impediments to the withdrawal of Valadez's pleas. Instead, I would remand for further proceedings, which may indeed result in withdrawal of Valadez's guilty pleas or perhaps, could result in a determination of how to proceed if the State has somehow preserved the issues raised by Justice Prosser. If so, the circuit court could be called upon to decide on remand whether Valadez's motion to withdraw her guilty pleas is time-barred. See, e.g., Stern v. WERC, 2006 WI App 193, ¶38, 296 Wis. 2d 306, 722 N.W.2d 594 (remanding to allow agency to decide whether party had waived timeliness issue); Jungels v. Pierce, 825 F.2d 1127, 1132 (7th Cir. 1987) ("These are issues to be explored on remand, unless waived.").

¶59 To be clear, even if not deemed to be properly raised in the case at issue, however, arguments regarding the application of time limits to a motion premised on Wis. Stat. § 971.08(2) remain viable for a future case because we do not

1

decide that issue today. The present opinion of this court does not resolve the question of how long is too long to wait to bring a challenge based upon the failure of a court to give the warning required under Wis. Stat. § 971.08(1)(c). Our opinion certainly does not conclude that the amount of time that Valadez waited to file her motion for plea withdrawal was reasonable or that Valadez's claim was otherwise timely. The issue of timeliness was not pursued in the case at issue; thus, it remains undecided.

¶60 Despite the logic of Justice Prosser's dissent regarding the time period within which a motion for plea withdrawal based on Wis. Stat. § 971.08(2) should be filed, I do not join the dissent because I would prefer to reach a conclusion on that issue after meaningful briefing and argument. Here, given the posture of the case and the State's concessions, this was not done. See Swatek v. Cnty. of Dane, 192 Wis. 2d 47, 52 n.1, 531 N.W.2d 45 (1995) (citation omitted) ("[T]here are real problems with addressing unmade claims and developing the arguments for one side to a dispute."). Moreover, we often benefit from the analysis of the courts below; there was no analysis in this case of the issues raised by the dissent. Therefore, I conclude that this court could benefit from these issues being fully vetted on remand or in a future case.

¶61 Importantly, as stated, the court does not decide today whether there are any time constraints on the assertion of Wis. Stat. § 971.08(2) claims or whether Valadez timely raised her claim. Indeed, I emphasize that I do not join the opinion

2

of the court if it is read to resolve this issue.[1]  Justice Prosser's dissent seemingly fears that the opinion of the court could be construed as foreclosing the possibility of a time limit on § 971.08(2) claims.  See Dissent, ¶108.  I write to dispel that notion, as the court does not reach that conclusion.

¶62 On the contrary, the opinion of the court leaves the issue alive and well.  The opinion of the court is clear on this point; although the opinion addressed the first question that was certified to this court, it did not address the second.  See Majority op., ¶¶8-11 ("The appeal presents two questions: . . . 2. Is there a time limit for a defendant to file a motion to withdraw a plea based on Wis. Stat. § 971.08(2)? . . . We do not respond to the second question.").[2]

---

[1] If the opinion of the court is read to resolve this issue, then it is in fact only a lead opinion, since it would have failed to garner a majority of votes.

[2] Given the way the second certified question was framed to this court by the court of appeals, the State's concessions may be understandable.  The discussion by the court of appeals of time limits on Wis. Stat. § 971.08(2) claims was tethered to specific language in State v. Romero-Georgana, 2014 WI 83, 360 Wis. 2d 522, 849 N.W.2d 668.  See Valadez, Nos. 2014AP678, 2014AP679, 2014AP680, slip op., *5-6 (Wis. Ct. App. Jan. 21, 2015).  The parties agree that the discussion at issue in Romero-Georgana, which pertains to defendants who knowingly fail to assert ripe § 971.08(2) claims while pursuing unrelated postconviction claims, does not apply to Valadez's case.  See Romero-Georgana, 360 Wis. 2d 522, ¶67 n.14.  The State conceded that "Valadez did not pursue additional postconviction relief beyond the motions underlying this consolidated appeal."  Thus the concerns raised by the dissent, while reasonable, were not briefed or argued.

(continued)

3

Moreover, while the question posed in the second certified question could be interpreted in the manner in which Justice Prosser interprets it, it could also be interpreted much more narrowly. It is far from clear that the second issue, as raised by Justice Prosser, is in fact before the court. What we know is that the issues raised by Justice Prosser were not meaningfully briefed, argued, or otherwise vetted.

¶63 In other words, then, the analysis in Justice Prosser's dissent could become the law of the state, but I conclude that it is more prudent to have the issue clearly presented, fully briefed, and argued before reaching such a conclusion. In fact, there may be other bases upon which claims of those in Valadez's position are time-barred but that should be determined only after meaningful briefing and argument.

¶64 I also concur to clarify that this case should not be read as modifying our prior case law on deportation, including

---

It also bears mentioning that the court of appeals formulated the second certified question largely in terms of the interplay between potential time limits and the need to await the institution of deportation proceedings. The court of appeals asked, "If, in order to withdraw the plea, the defendant must show that deportation proceedings are underway, how does this standard fit in with the time limits for a motion to withdraw the plea?" Valadez, slip op., *1-2 (emphases added). Yet the court disposes of today's case based on Valadez's ability to demonstrate the likelihood that she will be excluded from admission to this country, not a likelihood that she will be deported. Majority op., ¶9. Obviously, then, Valadez does not need to wait for deportation proceedings to begin, which renders the question quoted above irrelevant. This is yet another reason not to attempt to decide the issue discussed by the dissent without briefing and argument.

State v. Shata, 2015 WI 74, 364 Wis. 2d 63, 868 N.W.2d 93,[3] State v. Ortiz-Mondragon, 2015 WI 73, 364 Wis. 2d 1, 866 N.W.2d 717,[4]

_____

[3] In Shata we concluded in part:

Shata is not entitled to withdraw his guilty plea because he did not receive ineffective assistance of counsel. Specifically, Shata's attorney did not perform deficiently. Shata's attorney was required to "give correct advice" to Shata about the possible immigration consequences of his conviction. Shata's attorney satisfied that requirement by correctly advising Shata that his guilty plea carried a "strong chance" of deportation. Shata's attorney was not required to tell him that his guilty plea would absolutely result in deportation. In fact, Shata's deportation was not an absolute certainty. Executive action, including the United States Department of Homeland Security's exercise of prosecutorial discretion, can block the deportation of deportable aliens.

State v. Shata, 2015 WI 74, ¶79, 364 Wis. 2d 63, 868 N.W.2d 93 (emphasis added) (citation omitted).

[4] In Ortiz-Mondragon, we concluded in part:

Ortiz-Mondragon is not entitled to withdraw his no-contest plea to substantial battery because he did not receive ineffective assistance of counsel. Specifically, his trial counsel did not perform deficiently. Because federal immigration law is not "succinct, clear, and explicit" in providing that Ortiz-Mondragon's substantial battery constituted a crime involving moral turpitude, his attorney "need[ed] [to] do no more than advise [him] that pending criminal charges may carry a risk of adverse immigration consequences." Ortiz-Mondragon's trial attorney satisfied that requirement by conveying the information contained in the plea questionnaire and waiver of rights form—namely, that Ortiz-Mondragon's "plea could result in deportation, the exclusion of admission to this country, or the denial of naturalization under federal law." Counsel's advice was correct, not deficient, and was consistent with Wis. Stat. § 971.08(1)(c). In addition, Ortiz-Mondragon's trial attorney did not perform deficiently

(continued)

5

and State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749. Fundamentally, this court's opinion, unlike the court's previous opinions, is about the single adverse immigration consequence of exclusion from admission to this country. Importantly, however, this case again highlights the need for circuit courts to take the time to properly administer the warning mandated by Wis. Stat. § 971.08(1)(c).

¶65 In short, I join the opinion of the court and its conclusion that Valadez has shown that her pleas are likely to result in her exclusion from admission to this country. I would remand for further proceedings, which may indeed result in withdrawal of Valadez's guilty pleas or perhaps, could result in a determination of how to proceed if the State has somehow preserved the issues raised by Justice Prosser. If so, the circuit court could be called upon to decide on remand whether Valadez's motion to withdraw her guilty pleas is time-barred. Regardless, the opinion of this court should not be viewed as resolving the question of how long is too long to wait to bring a challenge based upon the failure of a court to give the warning required under Wis. Stat. § 971.08(1)(c). Similarly, the opinion certainly does not conclude that the amount of time that Valadez waited to file her motion for plea withdrawal was reasonable, or that Valadez's claim was otherwise timely. I

---

by failing to further research the immigration consequences of the plea agreement.

State v. Ortiz-Mondragon, 2015 WI 73, ¶70, 364 Wis. 2d 1, 866 N.W.2d 717 (emphasis added) (citation omitted).

decline to join Justice Prosser's dissent, because I conclude that this court could benefit from a thorough vetting of the issue having had the issue fully briefed and argued.  Finally, today's opinion does not alter our deportation case law.

¶66  For the foregoing reasons, I respectfully concur in part and dissent in part.

¶67  I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

¶68 DAVID T. PROSSER, J. *(dissenting)*. In May 2004 the defendant, Melisa Valadez, was charged with possession of cocaine, possession of THC, and possession of drug paraphernalia. She pled guilty to the first two misdemeanors; the third was dismissed but read in. In June 2004 Ms. Valadez was charged with possession of THC and possession of drug paraphernalia. She pled guilty to the latter; the former charge was dismissed and read in. In February 2005 she was charged again with possession of THC, a second or subsequent offense, which constituted a felony. She pled guilty on April 29, 2005.

¶69 In the plea colloquies for these offenses, the Walworth County Circuit Court failed to provide Ms. Valadez with the immigration warnings required by Wis. Stat. § 971.08(1)(c). This fact is not in dispute.

¶70 Wisconsin Stat. § 971.08(1)(c) (2005-06) reads:

> (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> . . . .
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

¶71 Subsection (2) then reads:

> (2) If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable

1

judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

Wis. Stat. § 971.08(2).

¶72 On October 3, 2013, Ms. Valadez moved to withdraw her 2004 and 2005 pleas. Her motion came approximately eight and one-half years after she entered her plea in April 2005 to the felony. Her motion was filed after she had completed her sentence.

¶73 The lengthy delay between her 2005 sentence and her 2013 plea withdrawal motion inevitably raises the question posed by the majority opinion: "Is there a time limit for a defendant to file a motion to withdraw a plea based on Wis. Stat. § 971.08(2)?" The certification from the court of appeals was more nuanced: "If, in order to withdraw the plea, the defendant must show that deportation proceedings are underway, how does this standard fit in with the time limits for a motion to withdraw the plea?"

I

¶74 There are long-established principles governing plea withdrawal. See State v. Cain, 2012 WI 68, ¶24, 342 Wis. 2d 1, 816 N.W.2d 177. Before sentencing, the circuit court should freely allow withdrawal of a plea if the defendant supplies any "fair and just reason" unless withdrawal would substantially prejudice the prosecution. State v. Jenkins, 2007 WI 96, ¶2, 303 Wis. 2d 157, 736 N.W.2d 24. After sentencing, however, the defendant must show that withdrawal is necessary to correct a "manifest injustice." Cain, 342 Wis. 2d 1, ¶24.

2

¶75 Our court adopted the "manifest injustice" test in State v. Reppin, 35 Wis. 2d 377, 386, 151 N.W.2d 9 (1967). However, over the past half century, the court has shifted its focus from the broad "manifest injustice" test to tailored rules for particular fact situations that amount to a manifest injustice.

¶76 A defective plea colloquy may constitute a manifest injustice that warrants plea withdrawal either before or after a defendant's sentence. The statutory basis for this rule is Wis. Stat. § 971.08, but § 971.08 does not embody all Wisconsin law on defective plea colloquies. There are many court decisions. The key decisions addressing the constitutional importance of plea colloquies in establishing knowing, intelligent, and voluntary pleas are State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and State v. Brown, 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906. Brown restated and supplemented the Bangert plea colloquy by adding the text of Wis. Stat. § 971.08(1)(c) as well as additional court-mandated duties. Brown, 293 Wis. 2d 594, ¶35.

¶77 The Brown court then explained the procedure on a plea withdrawal motion:

> After sentencing, in cases that involve an alleged deficiency in the plea colloquy, an attempt to withdraw a guilty plea proceeds as follows. The defendant must file a postconviction motion under Wis. Stat. § 809.30 or other appropriate statute. The motion must (1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information

3

that should have been provided at the plea hearing. <u>Bangert</u>, 131 Wis. 2d at 274.

When a <u>Bangert</u> motion is filed, it is reviewed by the court.  If the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy.  <u>Bangert</u>, 131 Wis. 2d at 274.  When the defendant has met his two burdens, the burden of producing persuasive evidence at the evidentiary hearing shifts to the state.  <u>Id.</u> at 275.  In meeting its burden, the state may rely "on the totality of the evidence, much of which will be found outside the plea hearing record."  <u>Hampton</u>, 274 Wis. 2d 379, ¶47.  For example, the state may present the testimony of the defendant and defense counsel to establish the defendant's understanding.  <u>Bangert</u>, 131 Wis. 2d at 275.  The state may also utilize the plea questionnaire and waiver of rights form, documentary evidence, recorded statements, and transcripts of prior hearings to satisfy its burden.

If the state is able to meet its burden, the hearing should be over.  In a theoretical sense, the burden will have shifted back to the defendant, but there is nothing for the defendant to prove because the defendant is not entitled to turn a <u>Bangert</u> hearing into a fishing expedition on other issues that were not pleaded in the defendant's original motion.

<u>Id.</u>, ¶¶39-41 (footnotes omitted).

¶78  The <u>Bangert</u> case (1986) was important for numerous reasons.  One reason is especially pertinent to this discussion. In <u>State v. Cecchini</u>, 124 Wis. 2d 200, 368 N.W.2d 830 (1985), this court held unanimously that prior to acceptance of a plea, a trial court "must ascertain that the defendant understands the nature of the charge, and that this must be done <u>on the record at the plea hearing</u>."  <u>Cecchini</u>, 124 Wis. 2d at 201 (emphasis

4

added). The court then held: "Because the trial court failed to do so . . . , the plea was involuntary and unknowing and in violation of the defendant's right to due process." Id. As we later explained in Brown, "[U]nder Cecchini, a deficient plea colloquy was per se a violation of due process and required withdrawal of the defendant's plea." Brown, 293 Wis. 2d 594, ¶26.

¶79 Bangert excised the language from Cecchini that required such a result and created the Bangert hearing.

¶80 What is at stake in the interpretation of Wis. Stat. § 971.08(2) is that one reading of the statute produces an absolute right to plea withdrawal, no matter when that right is asserted, if the court failed to properly warn the defendant. This reading would resurrect the Cecchini per se plea withdrawal rule but only for persons subject to "deportation, exclusion from admission to this country or denial of naturalization," not ordinary citizens.

¶81 Wisconsin Stat. § 971.08(2) does not appear to implicate any requirement for a Bangert-type hearing in which the state is permitted to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the court's failure to give the immigration warning. Thus, an "alien" (non-citizen) defendant will always appear to have a fair and just reason for plea withdrawal before sentencing and will not need to establish a manifest injustice for plea withdrawal after sentencing.

5

¶82 This strict interpretation of the statute does not appear to be unfair to the government <u>if</u> it is cabined by a reasonable time limit.  However, if the statute is not cabined by a reasonable time limit, it will not matter that an alien defendant fully understood the risk of adverse immigration consequences at the time of his plea.  He will <u>never</u> have to establish a manifest injustice for plea withdrawal.  It will not matter that an alien's untimely plea withdrawal will effectively prevent retrial or otherwise substantially prejudice the government.  It will not matter that an alien will have dramatically different plea-withdrawal rights from a citizen and may be able to obtain opportunities, such as gun ownership, that a citizen convicted of the same crime or crimes could not obtain under the law.

¶83 If the statute is not cabined by a reasonable time limit, the best thing that can happen to most alien defendants is for a court to forget to give the statutory warning.  In these circumstances, it would border on malfeasance for a defense attorney to interrupt a plea colloquy to ask for the warning.

¶84 The bizarre consequences of a limitless right to plea withdrawal for non-citizens who did not receive a proper immigration warning from the court compels an inquiry whether these results are what the legislature intended.

II

¶85 Wisconsin Stat. § (Rule) 809.30(1)(c) defines "postconviction relief":

6

> "Postconviction relief" means an appeal or <u>a motion</u> for postconviction relief in a criminal case, other than an appeal, motion, or petition under ss. 302.113(7m) 302.113(9g), 973.19, 973.195, 974.06, or 974.07(2). In a ch. 980 case, the term means an appeal or a motion for postcommitment relief under s. 980.038(4).

(Emphasis added.) Unsurprisingly, this definition does not exclude a postconviction motion under Wis. Stat. § 974.02.

¶86 Wisconsin Stat. § 974.02 is entitled "Appeals and postconviction relief in criminal cases." It reads in part:

> (1) <u>A motion for postconviction relief</u> other than under s. 974.06 or 974.07(2) by the defendant in a criminal case <u>shall be made in the time and manner provided in s. 809.30</u>. An appeal by the defendant in a criminal case from a judgment of conviction or from an order denying a postconviction motion or from both shall be taken in the time and manner provided in ss. 808.04(3) and 809.30. . . .

(Emphasis added.)

¶87 Wisconsin Stat. § (Rule) 809.30(2)(a) reads in part:

> <u>A person seeking postconviction relief in a criminal case . . . shall comply with this section.</u> Counsel representing the person at sentencing or at the time of the final adjudication shall continue representation by filing a notice under par. (b) if the person desires to pursue postconviction or postdisposition relief unless counsel is discharged by the person or allowed to withdraw by the circuit court before the notice must be filed.

(Emphasis added.)

¶88 Wisconsin Stat. § (Rule) 809.30(2)(b) reads in part: "<u>Notice of intent to pursue postconviction or postdisposition relief.</u> Within 20 days after the date of sentencing or final adjudication, the person shall file in circuit court and serve on the prosecutor and any other party a notice of intent to pursue postconviction or postdisposition relief."

7

¶89 Wisconsin Stat. § (Rule) 809.30 contains multiple other statutory deadlines. Then, subsection (2)(h) provides, "The person shall file in circuit court and serve on the prosecutor and any other party a notice of appeal or <u>motion seeking postconviction</u> . . . <u>relief</u> within 60 days after the later of the service of the transcript or circuit court case record." (Emphasis Added.)

¶90 The statutory section being interpreted——Wis. Stat. § 971.08(2)——clearly ties the right of plea withdrawal to a <u>motion</u> from the defendant:

> (2) If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court <u>on the defendant's motion</u> shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

(Emphasis added.)

¶91 It is not evident from the text of the quoted statutes why the right of plea withdrawal in Wis. Stat. § 971.08(2) is not governed by the time limits in Wis. Stat. § (Rule) 809.30, including a motion under Wis. Stat. § 974.06.

¶92 In <u>State v. Romero-Georgana</u>, 2014 WI 83, 360 Wis. 2d 522, 849 N.W.2d 668, the court discussed the fact that the 1981-82 version of Wis. Stat. § 971.08(2) contained a time limit that stated: "The court shall not permit the withdrawal of a plea of guilty or no contest later than 120 days after conviction." Wis. Stat. § 971.08(2) (1981-82). The 120-day

time limit was repealed in 1983 Wis. Act 219, § 43.[1]  A Judicial

Council note explained:

> Section 971.08(2), stats., providing a 120-day time limit for withdrawing a guilty plea or a plea of no contest after conviction, is repealed <u>as unnecessary</u>. Withdrawal of a guilty plea or a plea of no contest may be sought by postconviction motion under s. 809.30(1)(f), stats., or under s. 974.06, stats.

(Emphasis added.)

¶93 The court in <u>Romero-Georgana</u> observed that "[t]he Judicial Council Note suggests that, in general, the proper method for raising § 971.08 plea withdrawal claims after conviction is through a motion under Wis. Stat. § (Rule) 809.30, Wis. Stat. § 974.02, or Wis. Stat. § 974.06." <u>Romero-Georgana</u>, 360 Wis. 2d 522, ¶67 n.14.

¶94  We also observed:

> When a defendant has notice that he is likely to be deported and subsequently brings postconviction claims unrelated to Wis. Stat. § 971.08(2), we think it would be unwise to allow him to bring his claims as a §971.08(2) motion at a later time, although he may be able to bring his claims as a Wis. Stat. § 974.06 motion if he has a sufficient reason for the delay. Removing all time constraints on a Wis. Stat. § 971.08(2) motion would frustrate judicial efficiency by encouraging defendants to delay bringing those motions.  In the absence of a time limit, if a defendant were indifferent to deportation or wanted to

---

[1] The legislature adopted the 120-day time limit in § 63, ch. 255, Laws of 1969.  The Judicial Council legislation reduced "from one year to 120 days the time limit for withdrawing a 'guilty' plea."  Laws of 1969 at 641.  The one-year period had been established in <u>Pulaski v. State</u>, 23 Wis. 2d 138, 126 N.W.2d 625 (1964).  The <u>Pulaski</u> court had observed that "normally for a trial court to entertain a motion made beyond a year would seem to be an abuse of discretion."  <u>Id.</u> at 144.

be deported, the defendant would have incentive to keep a § 971.08(2) motion in his back pocket while pursuing relief on other grounds.

Id.

¶95 This brings us to Wis. Stat. § 974.06, which reads in pertinent part:

> (1) After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program under s. 973.11 claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
>     . . . .
>
> (4) All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

¶96 There is no time limit for a motion under Wis. Stat. § 974.06. Moreover, this court has ruled that the "sufficient reason" requirement in subsection (4) does not apply in cases in which the defendant did not file a motion under Wis. Stat. § 974.02 or file an appeal. Romero-Georgana, 360 Wis. 2d 522,

10

¶35 (citing State v. Lo, 2003 WI 107, ¶44 n.11, 264 Wis. 2d 1, 665 N.W.2d 756).

¶97 There are, however, other problems for plea withdrawal under Wis. Stat. § 974.06.

¶98 First, a person who files a § 974.06 motion must be in custody. Wis. Stat. § 974.06(1). Unlike Romero-Georgana, Ms. Valadez is not a prisoner in custody. She is not in custody, and her sentence has been served.

¶99 Second, it is doubtful that the court's failure to give the immigration warnings under Wis. Stat. § 971.08(2) means that Ms. Valadez's sentence was imposed in violation of the United States or Wisconsin Constitutions. Ms. Valadez would have to claim that her plea was not knowing, intelligent, and voluntary and/or that she was prejudiced by the ineffective assistance of counsel, and that her pleas should be withdrawn on those constitutional grounds.

III

¶100 The impediment to the above-mentioned analysis has long been the perceived unfairness of having a time limit attached to a statute that requires a defendant to prove that her conviction "is likely to result in . . . deportation." Wis. Stat. § 971.08(2). In State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749, the court said:

> [T]o satisfy Wis. Stat. § 971.08(2)'s "likelihood" of immigration consequences requirement, a defendant may allege that: (1) the defendant pleaded guilty or no contest to a crime for which immigration consequences are provided under federal law; and (2) because of his plea, the federal government has manifested its intent to institute one of the immigration consequences

11

listed in § 971.08(2), <u>as to the defendant</u>. As alternatives, a defendant may submit some written notification that the defendant has received from a federal agent that imports adverse immigration consequence because of the plea that was entered; or, a defendant may narrate verbal communications that the defendant has had with a federal agent advising that adverse immigration consequences were likely and that such consequences were tied to the crime for which the plea was entered.

<u>Negrete</u>, 343 Wis. 2d 1, ¶27 (emphasis added) (footnote omitted).

¶101 In the absence of some notice from federal authorities, a defendant may have serious difficulty in proving that he is "likely" to be deported under the <u>Negrete</u> test. This is why the court of appeals asked: "If, in order to withdraw [a] plea, the defendant must show that deportation proceedings are underway, how does this standard fit in with the time limits for a motion to withdraw the plea?"

¶102 The majority opinion supplies an answer by explaining that Ms. Valadez, unlike many who seek to vacate guilty pleas "by merely claiming they are 'likely' to be deportable, [claims] that she is 'likely' to be excluded from admission." Majority op., ¶32. She claims that even though she is a Lawful Permanent Resident, "if she were to leave the United States and seek to return, she would be excluded from admission as a result of her convictions," citing 8 U.S.C. § 1182(a)(2)(A)(i)(II). Majority op., ¶33.

¶103 The majority reasons as follows:

In contrast to deportation, a non-citizen would have to take affirmative steps in order to induce the federal government to exclude the non-citizen from admission to the United States. The federal government does not seek out individuals who may be excluded from admission or otherwise inform non-

12

citizens that they may be excluded from admission to this country based on convictions for violating laws relating to controlled substances.

Instead, the federal government, through the statutes governing admission to this country, excludes only non-citizens with convictions for violating laws relating to controlled substances who affirmatively seek admission to the country. Short of Ms. Valadez taking the affirmative step of leaving the United States and actually being excluded from admission, Ms. Valadez has no way aside from the immigration and naturalization statutes to demonstrate that she is "likely" to be excluded from admission.

Ms. Valadez's convictions are, as stated previously, explicitly listed in federal statutes as grounds for exclusion from admission. Based on the federal statutes, if Ms. Valadez leaves the United States and attempts to gain readmission to this country, the federal government will "likely" exclude her from admission because of her convictions.

Majority op., ¶¶42-44.

¶104 The majority concludes that Wis. Stat. § 971.08(2) does not require a showing that the federal government has taken steps to exclude Ms. Valadez from admission. "The statute requires only that a defendant show that such a consequence is 'likely.'" Majority op., ¶45. "In sum, Ms. Valadez has fulfilled the statutory requirements for withdrawing her pleas." Id., ¶53.

¶105 Under the majority's analysis, "any alien" who is "convicted of, or admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or conspiracy or attempt to violate) any laws or regulations . . . relating to a controlled substance," 8 U.S.C. § 1182(a)(2)(A)(i)(II), is immediately upon conviction able to establish grounds for plea withdrawal.

13

Consequently, these alien drug offenders do not need time for the government to act against them; they can satisfy the second ground for plea withdrawal immediately upon conviction, and a time limit on plea withdrawal will not disadvantage them.

¶106 The same statute relied upon by the majority applies to persons convicted of "a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). It applies to any alien "convicted of 2 or more offenses (other than purely political offenses), regardless of whether . . . the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years of more." 8 U.S.C. § 1182(a)(2)(B). It applies to many more.

¶107 In short, almost "any alien" defendant who seeks plea withdrawal on grounds that he did not receive the warnings under Wis. Stat. § 971.08(1)(c) will be able to make his case under a Wis. Stat. § 974.02 motion without raising the prospect of deportation.

¶108 The argument that fair play demands that an alien's right under Wis. Stat. § 971.08(2) have no time limit is unpersuasive. Permitting non-citizens to withdraw their pleas to serious crimes whenever they want to and regardless of the circumstances simply because they did not receive the statutory warning is too incongruous and unreasonable to be accepted.

¶109 For the foregoing reasons, I respectfully dissent.

¶110 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.

14